UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHINANO KENSHI CORPORATION, and SHINANO KENSHI CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> HONEYWELL INTERNATIONAL INC., <br><br> Defendant. | No. 1:22-cv-3704 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

NELSON MULLINS RILEY & SCARBOROUGH LLP

Lisa A. Herbert
330 Madison Avenue, 27th Floor
New York, New York 10017
Telephone: (212) 413-9000
Email: lisa.herbert@nelsonmullins.com

Erika C. Birg (*admitted pro hac vice*)
Avery G. Carter (*admitted pro hac vice*)
201 17th Street NW | Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6165
Email: erika.birg@nelsonmullins.com
Email: avery.carter@nelsonmullins.com

<h1 style="text-align:center"><u>TABLE OF CONTENTS</u></h1>

<u>PAGE</u>

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    The Parties' Rights and Obligations Under the SSA. ............................................. 2

    B.    Honeywell Exercises its Contractual Rights. ........................................................ 4

ANALYSIS ................................................................................................................... 5

    A.    Standard of Review ............................................................................................... 5

    B.    Shinano Cannot Sustain a Claim for Breach of Contract (Count 1). ..................... 6

        1.    New York rules of contract construction ...................................................... 6

        2.    Honeywell did not breach Section 2.3 of the SSA ...................................... 7

        3.    Honeywell did not terminate the SSA. ........................................................ 7

        4.    Shinano cannot prove damages. ................................................................... 8

    C.    Shinano's Alternative Claim for Breach of Contract Fails Because the SSA was not Modified (Count 2) ............................................................................ 9

    D.    The Duplicative Good Faith and Fair Dealing Claim Should Be Dismissed (Count 3). .......................................................................................................... 10

    E.    The Complaint Fails to State Valid Causes of Action for Fraud (Counts 4 and 5). ................................................................................................................ 11

        1.    Honeywell owed no duty to Shinano beyond the SSA. .............................. 12

        2.    The alleged misrepresentations were not collateral or extraneous to the SSA. .................................................................................................. 12

        3.    Shinano's fraud claims seek the same damages as its breach of contract claims. ........................................................................................ 13

    F.    The Complaint Fails to State a Valid Cause of Action for Negligent Misrepresentation (Count 6). ............................................................................. 14

        1.    There is no special relationship between Honeywell and Shinano. ........... 14

        2.    The negligent misrepresentation claim is duplicative of the breach of contract claims. ................................................................................... 15

    G.    Shinano's Demand for Punitive Damages Fails. ................................................ 16

CONCLUSION ........................................................................................................... 17

ii

# TABLE OF AUTHORITIES

**Cases**

*34–35th Corp. v. 1–10 Indus. Assocs., LLC,*
  2 A.D.3d 711 (2d Dep't 2003) .......................................................................... 12

*Air China, Ltd. v. Kopf,*
  473 F. App'x 45 (2d Cir. 2012) ........................................................................ 15

*In re AMR Corp.,*
  730 F.3d 88 (2d Cir. 2013) ................................................................................ 8

*Anschutz Corp. v. Merrill Lynch & Co.,*
  690 F.3d 98 (2d Cir. 2012) .............................................................................. 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................... 5

*Avant Cap. Partners LLC v. W108 Dev. LLC,*
  16 CIV. 3359 (LLS), 2016 WL 7377276 (S.D.N.Y. Dec. 9, 2016) ................... 11

*Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank
  AG,*
  234 F. Supp. 3d 526 (S.D.N.Y. 2017) ................................................................ 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................... 5

*Berman v. Sugo LLC,*
  580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................................................ 8

*Beth Israel Med. Ctr. v. Verizon Bus. Network Services, Inc.,*
  11 CIV. 4509 RJS, 2013 WL 1385210 (S.D.N.Y. Mar. 18, 2013) ..................... 6

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,*
  778 F. Supp. 2d 375 (S.D.N.Y. 2011) ................................................................ 9

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
  98 F.3d 13 (2d Cir. 1996) ................................................................................ 12

*Church of S. India Malayalam Congregation of Greater New York v. Bryant
  Installations, Inc.,*
  85 A.D.3d 706 (2d Dep't 2011) ....................................................................... 14

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473 (2d Cir. 2014)......................................................................................14, 15

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)...............................................................................................10

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
  352 F.3d 775 (2d Cir. 2003)...............................................................................................15

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)..................................................................................................5

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)...............................................................................................15

*Feifer v. Prudential Ins. Co. of Am.*,
  306 F.3d 1202 (2d Cir. 2002)...............................................................................................6

*Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*,
  248 F. Supp. 3d 487 (S.D.N.Y. 2017)..................................................................................8

*Great Earth Int'l Franchising Corp. v. Milks Dev.*,
  311 F. Supp. 2d 419 (S.D.N.Y. 2004)................................................................................13

*Guilbert v. Gardner*,
  480 F.3d 140 (2d. Cir.2007)...............................................................................................12

*Harris v. Provident Life & Acc. Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002).................................................................................................10

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*,
  655 F.3d 136 (2d Cir. 2011).................................................................................................6

*Izquierdo v. Mondelez Int'l, Inc.*,
  No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .................................15

*J.A.O. Acquisition Corp. v. Stavitsky*,
  8 N.Y.3d 144 (2007) .........................................................................................................14

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
  29 F. 4th 118 (2d Cir. 2022) .........................................................................................6, 11

*John St. Leasehold LLC v. F.D.I.C.*,
  196 F.3d 379 (2d Cir. 1999)..................................................................................................9

*Kimmell v. Schaefer*,
  89 N.Y.2d 257 (1996) ........................................................................................................15

*Kleinberg v. Radian Grp., Inc.*,
No. 01CIV.9295(RMB)(GWG), 2002 WL 31422884 (S.D.N.Y. Oct. 29, 2002) ...................................................................................................................10

*Kriegel v. Donelli*,
No. 11 CIV. 9160 ER, 2014 WL 2936000 (S.D.N.Y. June 30, 2014) ....................................13

*Madison Cap. Co., LLC v. Alasia, LLC*,
615 F. Supp. 2d 233 (S.D.N.Y. 2009) ....................................................................15

*MashreqBank, PSC v. ING Grp. N.V.*,
No. 13 CIV. 2318 LGS, 2013 WL 5780824 (S.D.N.Y. Oct. 25, 2013) (J. Schofield) .........................................................................................11, 12, 14

*Moreno-Godoy v. Kartagener*,
7 F. 4th 78 (2d Cir. 2021) ...............................................................................6

*Pugni v. Giannini*,
163 A.D.3d 1018 (2d Dep't 2018) .......................................................................13

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017) .............................................................................16

*Ricciuti v. N.Y.C. Transit Auth.*,
941 F.2d 119 (2d Cir. 1991) ..............................................................................5

*Rocanova v. Equitable Life Assur. Soc. of U.S.*,
83 N.Y.2d 603 (1994) ....................................................................................17

*Sabir v. Williams*,
37 F.4th 810 (2d Cir. 2022) ..............................................................................5

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
959 F.2d 425 (2d Cir. 1992) ..............................................................................6

*Spinelli v. Nat'l Football League*,
903 F.3d 185 (2d Cir. 2018) .............................................................................10

*Telecom Int'l Am., Ltd. v. AT & T Corp.*,
280 F.3d 175 (2d Cir. 2001) .............................................................................12

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993) ...............................................................................14

*TVT Records v. Island Def Jam Music Grp.*,
412 F.3d 82 (2d Cir. 2005) ..............................................................................16

*U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian*
    *Const. Corp.*,
    95 F.3d 153 (2d Cir. 1996).................................................................................16

*United States v. Liranzo*,
    944 F.2d 73 (2d Cir. 1991)..................................................................................6

*W.W.W. Assocs., Inc. v. Giancontieri*,
    77 N.Y.2d 157 (1990) .........................................................................................8

*Wall v. CSX Transp., Inc.*,
    471 F.3d 410 (2d Cir. 2006)...............................................................................13

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................................5

Fed. R. Evid. 408 .................................................................................................5

**Statutes**

N.Y. Gen. Oblig. Law § 15-301...........................................................................10

Defendant Honeywell International Inc. ("Honeywell") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs Shinano Kenshi Corporation's and Shinano Kenshi Co., Ltd.'s (collectively, "Shinano") Complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule(s)") 12(b)(6).

## PRELIMINARY STATEMENT

This case is about Shinano being unjustifiably upset with Honeywell for exercising its explicit rights under the parties' Strategic Supplier Agreement ("SSA"). The SSA allows Honeywell to delay shipments, cancel purchase orders, and not be responsible for any storage costs. Honeywell has at all times acted under the express rights the SSA gives. Yet Shinano twists the plain and unambiguous language of the SSA, trying to extricate from what it now believes is a bad bargain.

Stripped of Shinano's colorful language, the Complaint boils down to Shinano mischaracterizing Honeywell's contractual rights to delay and suspend shipments. Resting on contorted reasoning, Shinano asserts two flawed claims for breach of contract and several non-contractual claims, each relying on the same underlying conduct and alleged damages as its breach of contract claims. Each of Shinano's claims fail.

Shinano's claim for breach of contract (Count 1) fails because the clear terms of the SSA gave Honeywell complete discretion to change delivery schedules and temporarily suspend scheduled shipments. Shinano also cannot recover damages because no right to payment has accrued and the SSA forecloses any argument that Honeywell is liable for Shinano's storage costs.

Shinano's alternative claim for breach of a modified contract (Count 2) fails because the SSA requires that any modification of the SSA be in a writing expressly referring to the SSA and

signed by the parties. The Complaint fails to allege that the parties executed a signed writing amending the SSA (because they did not) and therefore this claim fails as a matter of law.

The claim for breach of the implied covenant of good faith and fair dealing (Count 3) fails because it impermissibly relies on the same underlying conduct, and seeks the same damages, as Shinano's breach of contract claims. Similarly, Shinano's fraud claims (Counts 4 and 5) fail because they overlap Shinano's breach of contract claims, and Shinano cannot show that any alleged fraud resulted in a loss independent of the damages Shinano claims for the alleged breach of contract.

Shinano's claim for negligent misrepresentation (Count 6) fails because there is no "special relationship" between Honeywell and Shinano and it is duplicative of Shinano's breach of contract claim. Finally, punitive damages are generally not available in breach of contract actions and Shinano has not plead any facts necessary to support the award of punitive damages.

In sum, because Shinano's Complaint states no claim upon which relief can be granted and cannot be cured through amendment, Honeywell asks this Court to dismiss Shinano's Complaint in its entirety, with prejudice, and without leave to replead.

## **BACKGROUND**[1]

### A.    **The Parties' Rights and Obligations Under the SSA.**

In October 2017, Honeywell and Shinano signed the SSA in which Shinano agreed to supply Honeywell with AIR-PUMP ASSY (the "Product"), a component of Honeywell's Powered Air Purifying Respirators ("PAPR"). (Compl. ¶ 17; *id.* Ex. A.) The SSA is governed under New York law. (*Id.* Ex. A § 24.3.) The parties acknowledged that the SSA "ha[d] been negotiated at

---

[1] In summarizing Shinano's allegations, which must be taken as true for purposes of this motion, Honeywell does not adopt those facts and reserves all rights to raise all factual and legal defenses.

arms length between parties who are experienced and knowledgeable in the matters contained in this Agreement . . . ." (*Id.* Ex. A § 24.6.)

The parties agreed that Honeywell would issue purchase orders for the Product to Shinano and Shinano would deliver the Product to Honeywell. (Compl. Ex. A §§ 3.1 and 12.1.) "Honeywell reserve[d] the right to change delivery schedules and temporarily suspend scheduled shipments, beyond the replenishment lead time of 5 business days." (*Id.* Ex. A § 12.1.) And the parties agreed Shinano would warehouse stocked Products at its facility with no responsibility on Honeywell to pay for that storage. (*Id.* Ex. A § 12.4; *id.* Ex. A. at Ex. B.)

Shinano could invoice Honeywell only after Shinano delivered the Products. SSA Section 11.5 provides that "[p]ayment terms are net 75 days from the later of Honeywell's (a) receipt of a correct invoice and (b) receipt of conforming Products or services . . . ." (Compl. Ex. A. §§ 11.5 & 11.6.)

The SSA specifies when Honeywell can terminate purchase orders or the entire contract. Under Section 2.3, "***Honeywell may terminate the Agreement for convenience upon 30 days' prior written notice. Honeywell may terminate any Purchase Order without liability on the part of Honeywell upon 30 days' notice***." (Compl. Ex. A § 2.3 (emphasis added).) The SSA further provides that "[t]ermination is without liability to Honeywell except for payment for completed Products delivered and accepted by Honeywell before the date of termination . . . ." (*Id.* Ex. A § 2.4.) But if, and only if, Honeywell terminated the SSA under Section 2.3, then "Honeywell's sole liability to [Shinano], and [Shinano's] sole and exclusive remedy, is payment for (A) Products received and accepted by Honeywell before the date of termination, and (B) with respect to custom Products that are within lead time under terminated Purchase Order(s), unique raw materials, work in progress, and finished Products, which shall be delivered to Honeywell." (*Id.* Ex. A § 2.4.)

Finally, the SSA contained an entire agreement provision which provides:

> This Agreement, together with any previously executed agreement(s) pertaining to confidentiality and/or non-disclosure, constitutes the entire agreement of Honeywell and [Shinano] regarding the subject matter hereof, superseding all prior agreements or understanding, written or oral and ***it may not be modified***, extended, cancelled or rescinded ***except in a writing signed by the parties which expressly references this Agreement*** . . . . No representation, warranty, course of dealing, or trade usage not contained or expressly set forth herein will be binding on with (sic) party.

(Compl. Ex. A § 24.1 (emphasis added).)

## B.    Honeywell Exercises its Contractual Rights.

As the COVID-19 pandemic spread across the world, Honeywell issued purchase orders to Shinano for 112,000 units of the Product. (Compl. ¶¶ 30, 38, 40.) Honeywell's increased demand for the Product was to meet the U.S. government's request to supply the PAPR products worldwide. (*Id.* ¶¶ 30, 31.)

In August 2020, Honeywell invoked its contractual rights to modify the delivery schedule and proposed to cancel around 12,000 units of the Product. (Compl. ¶¶ 48, 49, 53.) Honeywell timely notified Shinano that its demand for the Product decreased because the U.S. government placed export restrictions on the Product, preventing it from being sold outside the United States. (*Id.* ¶ 50.) The parties ultimately agreed to cancel 6,000 units of the Product. (*Id.* ¶ 53.) The Complaint does not allege that (i) the parties modified any other purchase orders, (ii) the SSA was modified in a signed writing by the parties, or (iii) Honeywell terminated the SSA on 30 days' prior written notice. (*See generally, id.*)

In the Fall of 2020, Honeywell and Shinano went back and forth about a proposed delivery schedule for the outstanding units of the Product. (Compl. ¶ 58.) In January and February 2021, relying on the terms of the SSA, Honeywell notified Shinano it could not accept the outstanding units yet and requested that Shinano continue to hold them. (*Id.* ¶¶ 60, 63.) Growing weary of

Shinano's inappropriate threats to invoice Honeywell for undelivered Products, Honeywell asked Shinano to provide proposed cancellation costs for the full quantity of units Shinano had stored. (*Id.* ¶¶ 64, 65.) In an effort of good faith, despite the contractual language of the SSA, Honeywell proposed to pay Shinano for cancellation fees to avoid further dispute.[2] (*Id.* ¶ 70.) These negotiations to settle a business dispute went nowhere. Shinano rejected Honeywell's offer and instead sued. (*Id.*) To date, Shinano has not invoiced Honeywell for the outstanding units (because it cannot), and it cannot require Honeywell to pay storage charges. (*Id.* Ex. A § § 11.5 & 12.4.)

## ANALYSIS

### A. Standard of Review

A Rule 12(b)(6) motion to dismiss should be granted if Plaintiff's factual allegations do not show the right to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. This means the complaint must present "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A motion to dismiss should be granted 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

For a Rule 12(b)(6) motion, the Court may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Sabir v. Williams*, 37 F.4th 810, 814 (2d Cir. 2022) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "On a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself, which by definition is integral to the complaint." *Axiom*

---

[2] Honeywell reserves its objections to the admissibility of settlement discussions under Federal Rule of Evidence 408. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

*Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011)).

B.    **Shinano Cannot Sustain a Claim for Breach of Contract (Count 1)**.

To prove breach of contract under New York law, Shinano must prove (1) existence of a contract, (2) performance of the contract by Shinano, (3) breach by Honeywell, and (4) damages. *Moreno-Godoy v. Kartagener*, 7 F. 4th 78, 85 (2d Cir. 2021). "Contractual claims unambiguously barred by an agreement between the parties may be determined on a motion to dismiss." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F. 4th 118, 122 (2d Cir. 2022); *see also Beth Israel Med. Ctr. v. Verizon Bus. Network Services, Inc.*, 11 CIV. 4509 RJS, 2013 WL 1385210, at *2 (S.D.N.Y. Mar. 18, 2013) ("Dismissal of a breach of contract claim is appropriate where a contract's clear, unambiguous language excludes a plaintiff's claim.") Shinano's breach of contract claim fails because (i) Honeywell acted within its rights under the SSA, (ii) Honeywell never terminated the SSA, and (iii) Shinano cannot show it is entitled to any damages.

1.    **New York rules of contract construction**

"In reviewing a written contract, a trial court's primary objection is to give effect to the intent of the parties as revealed by the language they chose to use," and thus a court "ordinarily looks only at the wording used by the drafters who presumably understood what they intended." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 426 & 428 (2d Cir. 1992). "It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002) (citing *United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991)).

**2.      Honeywell did not breach Section 2.3 of the SSA.**

Honeywell acted within its express rights under the SSA to terminate purchase orders in August 2020. SSA Section 2.3 provides that "Honeywell may terminate any Purchase Order without liability on the part of Honeywell upon 30 days' prior written notice." (Compl. Ex. A § 2.3.) Shinano misconstrues the operative terms allowing Honeywell to cancel purchase orders, improperly contending the SSA requires Honeywell to terminate within "30 days *of issuance*." (*Id.* ¶ 78 (emphasis added).) Instead, the 30 days' prior notice must be based on the date of shipment, a known date that Honeywell controls. (*See* Ex. A § 12.1 ("Honeywell reserves the right to change delivery schedules and temporarily suspend scheduled shipments . . . .").)

Honeywell affirmatively told Shinano, in writing, it wished to cancel *units* in August 2020. (Compl. ¶¶ 49, 50.) This was more than 30 days' prior notice and Honeywell does not need Shinano's permission to cancel a purchase order under the SSA, and Shinano cannot prevent Honeywell from exercising its rights to do so. And at no point does Shinano show Honeywell "cancelled" any other purchase orders. Thus, Honeywell did not breach Section 2.3 of the SSA.

**3.      Honeywell did not terminate the SSA.**

Section 2.3 of the SSA allows Honeywell to "terminate this Agreement for convenience upon 30 days' prior written notice." (Compl. Ex. A § 2.3.)  Shinano does not allege that Honeywell provided said written notice to terminate the SSA, and therefore Section 2.4, upon which Shinano relies, is inapplicable. Instead, as the SSA plainly states, Section 2.4 comes into play ***only if*** Honeywell "terminates this Agreement under Section 2.3." (*Id.* Ex. A. § 2.4.)  Because it is undisputed that Honeywell has not terminated the SSA, Section 2.4's payment obligations never triggered.

Despite the clear and unambiguous language of Sections 2.3 and 2.4, Shinano contends that Honeywell somehow terminated the SSA *by its conduct when Honeywell* "(i) fail[ed] to accept

the Outstanding Products within the delivery schedules agreed to between the parties, and (ii) terminat[ed] discussions between the parties regarding the Outstanding Products, among other reasons."[3] (Compl. ¶ 80.) Both arguments fail because the SSA gives Honeywell the unilateral right to change delivery schedules and suspend scheduled shipments. (*Id.* Ex. A § 12.1.) "[W]hen parties set down their agreement in a clear, complete document . . . their writing should as a rule be enforced according to its terms." *In re AMR Corp.*, 730 F.3d 88, 98 (2d Cir. 2013) (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990)). Honeywell thus controls delivery and shipment of goods and acted within its rights to suspend shipments. There also is no advance notice requirement for delivery schedule changes and Honeywell is under no contractual obligation to "continue discussions" about delivery schedules. Thus, Honeywell did not breach the SSA, and Section 2.4 does not apply.

### 4. Shinano cannot prove damages.

Shinano also cannot recover damages because no right to payment has accrued. Under the SSA, Honeywell does not have to pay Shinano for undelivered Products. Section 11.5 expressly provides that "[p]ayment terms are net 75 days from the later of Honeywell's (a) receipt of a correct invoice and (b) *receipt of conforming Products or services . . . .*" (Compl. Ex. A § 11.5 (emphasis added).) Honeywell has received no Products for which it has not paid. Thus, Shinano has no damages.

---

[3] Shinano alleges that Honeywell breached the SSA for "other reasons" without identifying how the SSA was breached or pointing to any specific provision that was breached. But New York law requires a plaintiff to "identify what provisions of the contract were breached as a result of the acts at issue." *Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 492 (S.D.N.Y. 2017) (internal quotation marks omitted). "Stating in a conclusory manner that an agreement was breached does not sustain a claim for breach of contract." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

Finally, Honeywell is not liable for any of Shinano's storage costs. Under SSA Section 12.4, Honeywell will never be responsible for storage or other charges. (Compl. Ex. A § 12.4 ("No extra charges of any kind, including charges for storage . . . will be imposed by Supplier."); *see also id.* Ex. A at Ex. B ("Supplier will warehouse stocked Products at Supplier's facility.").) Thus, Honeywell is not required to pay for storing Products at Shinano facilities and Shinano has suffered no compensable damages.

## C.     Shinano's Alternative Claim for Breach of Contract Fails Because the SSA was not Modified (Count 2).

SSA Section 24.1 provides that "[t]his Agreement . . . constitutes the entire agreement of Honeywell and [Shinano] regarding the subject matter hereof . . . and it *may not be modified*, extended, cancelled or rescinded *except in a writing signed by the parties which expressly references this Agreement*." (Compl. Ex. A § 24.1 (emphasis added).) And that language is enforceable. *John St. Leasehold LLC v. F.D.I.C.*, 196 F.3d 379, 382 (2d Cir. 1999). "Where a contract provides a procedure for amending contract provisions, that procedure must be followed to execute a valid amendment." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 411–12 (S.D.N.Y. 2011).

Shinano does not allege (nor could it) that the parties jointly executed any agreement to modify the SSA. Realizing there is no signed agreement to modify the SSA, Shinano contends that "email communications and other correspondence" somehow modified the SSA. (Compl. ¶¶ 89, 92.) But the plain and unambiguous language of the SSA provides only one method to modify the SSA, which the parties did not undertake.

In *Kleinberg v. Radian Grp., Inc.*, No. 01CIV.9295(RMB)(GWG), 2002 WL 31422884 (S.D.N.Y. Oct. 29, 2002), report and recommendation adopted, 240 F. Supp. 2d 260 (S.D.N.Y. 2002), the parties' contract had a similar modification clause in which the contract could be

modified only if it was agreed to in writing and signed by the defendant's board of directors. *Id.* at *2. The plaintiff brought a breach of contract claim and relied on a post-contractual email he sent to defendant to argue that the contract was modified. *Id.* at *2, 5. The court rejected the argument based on the express language of the modification provision and held that the post-contractual promise via email was ineffective to alter the contract. *Id.* at *5. The court reasoned that the no modification clause fell within the terms of N.Y. Gen. Oblig. Law § 15-301, which states that an agreement "cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought." *Id.* (citing N.Y. Gen. Oblig. Law § 15-301). Like *Kleinberg*, Shinano's reliance on post-contractual email communications to modify the SSA fails.

**D.      The Duplicative Good Faith and Fair Dealing Claim Should Be Dismissed (Count 3).**

The implied covenant claim should be dismissed because it relies on the same underlying conduct, and alleges the same damages, as Shinano's breach of contract claims—that Honeywell "failed" or "refused" to accept delivery of the outstanding Products and "attempted" to cancel purchase orders. (*Compare* Compl. ¶¶ 78, 80, 94, 100.) New York law "does not recognize a separate cause of action for breach of the implied covenant and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018) (quoting *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). Thus, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). Further, when the claim is intrinsically tied to the damages sought from an alleged breach of contract, the claim will likewise not survive. *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F. 4th 118, 128 (2d Cir. 2022).

Shinano acknowledges that the claim relies on its breach of contract claims because it "incorporates by reference the allegations contained in the foregoing paragraphs" and alleges that "[b]y virtue of the allegations set forth in the paragraphs above, Honeywell has breached the implied covenant of good faith and fair dealing." (*Id.* ¶¶ 99 & 101.) The "allegations" Shinano relies on includes both the facts and the breach of contract claims themselves, which evidences that the claim is duplicative. Indeed, in *Avant Cap. Partners LLC v. W108 Dev. LLC*, 16 CIV. 3359 (LLS), 2016 WL 7377276 (S.D.N.Y. Dec. 9, 2016), the Southern District of New York dismissed a plaintiff's claim for breach of the implied covenant of good faith and fair dealing where the claim "incorporate[d] herein by reference all allegations" contained in the preceding paragraphs, which formed the basis of its breach of contract claim. *Id.* at *4. The court reasoned that the claim was duplicative even though plaintiff included additional allegations because those allegations were based on the same facts and predicated on the same contract terms as plaintiff's breach of contract claim. *Id.* The same is true here because Shinano's claim relies on the same facts and terms as its breach of contract claims and alleges the same damages. (*Compare* Compl. ¶¶ 78, 80, 85, 94, 98, 100, 102.) Therefore, the claim for implied covenant of good faith and fair dealing is duplicative and must be dismissed.

**E.    The Complaint Fails to State Valid Causes of Action for Fraud (Counts 4 and 5).**

Shinano's fraud claims are merely dressed up breach of contract claims which have routinely been dismissed by this Court. "A complaint 'fails to support a claim of fraud under New York law' where the fraud claim is 'duplicative of the breach of contract claim.'" *MashreqBank, psc v. ING Grp. N.V.*, No. 13 CIV. 2318 LGS, 2013 WL 5780824, at *5 (S.D.N.Y. Oct. 25, 2013) (J. Schofield) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 148 (2d. Cir.2007)). "A claim for fraud cannot survive when it 'arises out of the identical facts and circumstances, and even contains the same allegations, as the cause of action alleging breach of contract.'" *Id.* (quoting *34–35th Corp.*

*v. 1–10 Indus. Assocs., LLC*, 2 A.D.3d 711, 712 (2d Dep't 2003)). "[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (internal quotation marks omitted).

In *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996), the Second Circuit reasoned that for a fraud claim to coexist with a breach of contract claim, a plaintiff must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract"; (ii) "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id.* at 20 (citations omitted). Shinano meets none of the *Bridgestone* factors.

### 1. Honeywell owed no duty to Shinano beyond the SSA.

Neither of Shinano's fraud claims allege that Honeywell owed it a legal duty beyond Honeywell's duty to perform under the SSA. That is because Honeywell's duty to Shinano was defined by the contractual relationship outlined in the SSA. Thus, Shinano cannot satisfy this element.

### 2. The alleged misrepresentations were not collateral or extraneous to the SSA.

Shinano cannot show that the alleged misrepresentations were collateral or extraneous to the SSA. For alleged misrepresentations to be collateral or extraneous to the contract under the second *Bridgestone* factor, they generally must concern matters outside the terms of the contract. *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 426–27 (S.D.N.Y. 2004) ("[A]s a matter of both logic and law, the primary consideration . . . is whether the contract itself speaks to the issue."). Courts examine "whether the alleged misrepresentation was warranted or

not mentioned by the contract; whether it was the misstatement of a present fact which induced entry into the contract; whether it constituted the failure to perform a duty specified in the contract; and whether it is generally duplicative of the breach of contract claim." *Id.* at 428.

Shinano's fraud claims are dressed up breach of contract claims because it contends Honeywell issued too many purchase orders and Honeywell failed to accept delivery of the outstanding Products. (*Compare* Compl. ¶¶ 105, 108, 121, 124.) But issuance of purchase orders and delivery are both explicitly covered under the SSA. (*Id.* Ex. A §§ 3.1, 12.1.) The SSA covers any alleged promise Honeywell made about purchases and delivery, or performance. This is fatal to Shinano's fraud claims, as the Second Circuit has held "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). Because Shinano's fraud claims mimic its breach of contract claims, they should be dismissed.

### 3. Shinano's fraud claims seek the same damages as its breach of contract claims.

Finally, Shinano cannot show that any alleged fraud resulted in a loss independent of the damages allegedly incurred for breach of contract. *See Kriegel v. Donelli*, No. 11 CIV. 9160 ER, 2014 WL 2936000, at *14 (S.D.N.Y. June 30, 2014) (holding that the third *Bridgestone* factor favored dismissing plaintiff's fraud claim because the plaintiff "d[id] not claim any special damages resulting from the alleged fraud, and indeed explicitly s[ought] identical relief for his fraud and contract claims"); *Pugni v. Giannini*, 163 A.D.3d 1018, 1020 (2d Dep't 2018) (dismissing a fraud claim for duplicating a breach of contract because the plaintiff did not contend that the alleged "misrepresentation resulted in any loss independent of the damages allegedly incurred for breach of contract").

Shinano seeks the same damages for the alleged fraud as it does for the alleged breach of contract. (*Compare* Compl. ¶¶ 82, 98, 116, 117, 133, 134.) And as this Court has held, "[w]hile [Shinano] does request punitive damages, this does not suffice to sustain a fraud claim where 'the alleged misrepresentations did not result in any loss independent of the damages allegedly incurred for breach of contract.'" *MashreqBank*, 2013 WL 5780824, at *6 (citing *Church of S. India Malayalam Congregation of Greater New York v. Bryant Installations, Inc.*, 85 A.D.3d 706, 707 (2d Dep't 2011)). Thus, Shinano's fraud claims fail as a matter of law.

## F. The Complaint Fails to State a Valid Cause of Action for Negligent Misrepresentation (Count 6).

To prove negligent misrepresentation a plaintiff must show that "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)). Shinano's claim for negligent misrepresentation must be dismissed because there is no special relationship between Honeywell and Shinano and the claim is indistinguishable from Shinano's breach of contract claims.

### 1. There is no special relationship between Honeywell and Shinano.

The "duty" or "special relationship" element of negligent misrepresentation limits such claims to "situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity'." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993)). "[L]iability in the commercial context is 'imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Crawford v. Franklin Credit*

*Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). Indeed, "the vast majority of arms-length commercial transactions, which are comprised of 'casual statements and contacts,' will not give rise to negligent misrepresentation claims." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).

Shinano cannot show there was a special relationship between it and Honeywell. Shinano's conclusory statement that Honeywell had "extensive experience" and "superior knowledge" with the U.S. Government does not withstand scrutiny. (Compl. ¶ 137.) For there to be a duty under a negligent misrepresentation claim, the relationship between Honeywell and Shinano "requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003)*.* That is not present here (and certainly not pleaded). Instead, Honeywell and Shinano's relationship was an arm's length deal between two sophisticated parties. (Compl. Ex. A § 24.6.) Thus, the claim must be dismissed.

### 2.    The negligent misrepresentation claim is duplicative of the breach of contract claims.

Shinano's negligent misrepresentation claim, like its fraud claims, is a repackaged breach of contract claim. "[U]nder New York law contractual relationships generally do not support a negligent misrepresentation claim." *Air China, Ltd. v. Kopf*, 473 F. App'x 45, 49 (2d Cir. 2012). And like fraud, a negligent misrepresentation claim will be dismissed if it is based on the same facts as a breach of contract claim. *See Madison Cap. Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009) ("If the duty between the parties arose out of a contract, such that the

contract required a correct representation, then any misrepresentation must be pled as a breach of contract, not as a tort claim for negligent misrepresentation.")

Shinano grounds its claim in the allegations that Honeywell misrepresented its need for 112,000 units of the Product and refused to accept delivery of the outstanding Products. (Compl. ¶¶ 136, 138.) Those are the very same facts that allegedly support the breach of contract claim (which fails for its own reasons). And Shinano seeks the very same damages as it does for its breach of contract claims. (*Id.* ¶¶ 82, 98, 142.) Thus, the claim should be dismissed as duplicative.

## G.    Shinano's Demand for Punitive Damages Fails.

Shinano's demand for punitive damages should be denied as moot because all its claims fail. But even if one of Shinano's claims somehow survived, Shinano's request for punitive damages still fails.

Under New York law, punitive damages generally are unavailable for breach of contract actions. *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 94–96 (2d Cir. 2005). Punitive damages are recoverable in a breach of contract action ***only*** where: (1) Honeywell's conduct is actionable as an independent tort; (2) the tortious conduct is of an egregious nature; (3) the egregious conduct is directed toward Shinano; and (4) Honeywell's conduct is part of a pattern directed at the public generally. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (citations omitted). Shinano cannot meet any of elements.

Shinano's claims for fraud and negligent misrepresentation fail, and Shinano cannot point to any conduct of Honeywell that was "so egregious" as to permit an award for punitive damages. *See U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 160–61 (2d Cir. 1996) ("[W]here the breach of contract also involves a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations,' punitive damages are recoverable if the conduct was '*aimed at*

*the public generally. . . .* [t]hus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was *part of a pattern of similar conduct directed at the public* generally."') (quoting *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (1994)).

The Complaint also does not allege that Honeywell's conduct was aimed at or harmed the public. Instead, the best Shinano could muster was to repeat a conclusory statement that "Honeywell's bad faith and malicious, willful, reckless, wanton, and fraudulent actions warrant the imposition of exemplary and punitive damages." (Compl. ¶¶ 115, 132.) This conclusory allegation, with no factual basis, shows there is no public harm. Thus, Shinano's demand for punitive damages should be denied.

## CONCLUSION

One thing is clear, Shinano regrets the deal it made with Honeywell. But that regret does not give Shinano the right to deprive Honeywell of the contractual benefits to which the parties agreed. Only by misreading the SSA can Shinano argue that Honeywell breached. Yet the SSA provides Honeywell with explicit contractual rights that it properly exercised. Shinano's non-contractual claims fail because they all are based on the same facts, and allege the same damages, as Shinano's breach of contract claims. Indeed, Shinano incorporates all of the allegations into each count, emphasizing the repetitive nature of the claims. For these reasons, Shinano's

Complaint fails to state a single claim against Honeywell, and Honeywell asks the Court to dismiss

Shinano's Complaint with prejudice.

Dated: August 8, 2022
      New York, New York

                                           Respectfully submitted,
                                           NELSON MULLINS RILEY & SCARBOROUGH LLP

                                           */s/ Lisa A. Herbert*
                                           Lisa A. Herbert
                                           330 Madison Avenue, 27th Floor
                                           New York, New York 10017
                                           Telephone: (212) 413-9000
                                           Email: lisa.herbert@nelsonmullins.com

                                           Erika C. Birg (*admitted pro hac vice*)
                                           Avery G. Carter (*admitted pro hac vice*)
                                           201 17th Street NW | Suite 1700
                                           Atlanta, Georgia 30363
                                           Telephone: (404) 322-6165
                                           Email: erika.birg@nelsonmullins.com
                                           Email: avery.carter@nelsonmullins.com

                                           *Counsel for Defendant Honeywell International Inc.*