| | |
|---|---|
| SHINANO KENSHI CORPORATION, and SHINANO KENSHI CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> HONEYWELL INTERNATIONAL INC., <br><br> Defendant. | No. 1:22-cv-3704 (LGS) |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

NELSON MULLINS RILEY & SCARBOROUGH LLP

Lisa A. Herbert
330 Madison Avenue, 27th Floor
New York, New York 10017
Telephone: (212) 413-9000
Email: lisa.herbert@nelsonmullins.com

Erika C. Birg (*admitted pro hac vice*)
Avery G. Carter (*admitted pro hac vice*)
201 17th Street NW | Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6165
Email: erika.birg@nelsonmullins.com
Email: avery.carter@nelsonmullins.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii
INTRODUCTION ............................................................................................................... 1
ARGUMENT ....................................................................................................................... 1
      A.      Plaintiffs' First Breach of Contract Claim Fails. ..................................................... 1
            1.      Honeywell acted within its contractual rights to cancel purchase orders. ... 1
            2.      Section 2.3's termination provision is unambiguous. ............................... 2
            3.      Payment becomes due upon receipt of the goods. ..................................... 3
      B.      The Parties Did Not Modify the SSA. .................................................................. 4
      C.      The Breach of Implied Covenant is Duplicative
            as the Breach of Contract Claims.......................................................................... 5
      D.      Plaintiffs' Fraud Claims are Not Extraneous or Collateral to the SSA................... 7
      E.      Plaintiffs' Negligent Misrepresentation Claim Fails. ............................................ 8
      F.      Plaintiffs Cannot Recover Punitive Damages........................................................ 9
CONCLUSION................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Airport Mart Inc. v. Dunkin Donuts Franchising LLC*, No. 18-CV-170 (KMK),
 2019 WL 4413052 (S.D.N.Y. Sept. 16, 2019) ...................................................................9

*Alter v. Bogoricin*, No. 97 CIV. 0662 (MBM), 1997 WL 691332 (S.D.N.Y. Nov.
 6, 1997) ..............................................................................................................................5

*Bank of NY Mellon Tr. Co., N.A. v. Morgan Stanley Mtge. Cap., Inc.,* 821 F.3d
 297 (2d Cir. 2016) ..............................................................................................................2

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir.
 1996) ..................................................................................................................................9

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013) .........................................................6

*Emigrant Bank v. UBS Real Est. Sec., Inc.*, 49 A.D.3d 382 (1st Dep't 2008) ...............................8

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584
 (1999) ................................................................................................................................4

*Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202 (2d Cir. 2002) ..............................................3

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, No. 11 Civ. 4491, 2013
 WL 1294519 (S.D.N.Y. Mar. 30, 2013), *aff'd*, 552 Fed. Appx. 13 (2d Cir.
 2014) ..................................................................................................................................4

*Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419 (S.D.N.Y.
 2004) ..................................................................................................................................7

*Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*, No. 15-CV-8292 (KMW), 2019 WL
 1494398 (S.D.N.Y. Apr. 2, 2019) ......................................................................................5

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 CIV. 0432 (LAP), 2008 WL
 650403 (S.D.N.Y. Mar. 7, 2008) .......................................................................................9

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118 (2d Cir. 2022) .........................6

*Kaplan v. Old Mut. PLC*, 526 F. App'x 70 (2d Cir. 2013) ............................................................4

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673
 (S.D.N.Y. 2018) ................................................................................................................2

*Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634 (S.D.N.Y. 2016) ............................1

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106 (S.D.N.Y. 2010) ............................................................................................................5

*Manley v. AmBase Corp.*, 337 F.3d 237 (2d Cir. 2003) ................................................2

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229 (1st Dep't 2011) ............................................................................................................................8

*Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101 (2d Cir. 2008) .......................2

*Paper Corp. of U.S. v. Schoeller Tech. Papers, Inc.*, 742 F. Supp. 808 (S.D.N.Y. 1990) ............................................................................................................................7

*Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v. Salomon Bros. Int'l Ltd.*, 251 A.D.2d 137 (1st Dep't 1998) ......................................8

*TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15 Civ. 3371, 2015 WL 4461769 (S.D.N.Y. July 21, 2015) ..............................................................................3

*United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153 (2d Cir.1996) .................................................................................9

*Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291 (S.D.N.Y. 2009) ..................2

**Statutes**

N.Y. Gen. Oblig. Law § 15-301................................................................................................3

**INTRODUCTION**

Defendant Honeywell International Inc.'s ("Honeywell") Motion to Dismiss Plaintiffs' Shinano Kenshi Corporation's and Shinano Kenshi Co., Ltd.'s (collectively, "Plaintiffs") Complaint should be granted because the Strategic Supplier Agreement ("SSA") provides Honeywell with explicit contractual rights it properly exercised, and Plaintiffs' non-contractual claims duplicate Plaintiffs' breach of contract claims.

**ARGUMENT**

**A.  Plaintiffs' First Breach of Contract Claim Fails.**

**1.  Honeywell acted within its contractual rights to cancel purchase orders.**

The SSA says Honeywell can terminate any purchase order without liability upon 30 days' prior written notice. (Compl. Ex. A § 2.3.) Immediately following, Section 2.4 confirms that "[t]ermination [of any purchase order] is without liability to Honeywell except for payment for completed Products *delivered and accepted* by Honeywell before the date of termination[.]" (*Id.* Ex. A § 2.4 (emphasis added).) Limiting Honeywell's liability to "Products delivered and accepted" shows that the notice requirement of Section 2.3 is based on the date of shipment. Thus, Honeywell acted within its express rights in August 2020 to terminate purchase orders before delivery.

New York law dooms Plaintiffs' contentions to the contrary.[1] "If the meaning of contractual language is otherwise plain, the language does not become ambiguous merely because the parties urge different interpretations in the litigation." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 643 (S.D.N.Y. 2016). "The rules of contract construction require [the Court]

---

[1] Plaintiffs contend the notice provision of Section 2.3 cannot run from the shipment date because Section 2.3 does not include "shipment." Plaintiffs argue Honeywell may cancel a purchase order only within 30 days after issuance. (ECF 27 at 6.) Plaintiffs implicitly acknowledge their interpretation is flawed, so they backpedal, now arguing ambiguity. (ECF 27 at 7–8.)

1

to adopt an interpretation which gives meaning to every provision of the contract." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008). Courts must avoid "interpretations that render contract provisions meaningless or superfluous." *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003). "[C]ourts should construe a contract in a manner that avoids inconsistencies and reasonably harmonizes its terms." *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 682 (S.D.N.Y. 2018) (citation omitted).

Plaintiffs' proffered interpretation of Section 2.3 would mean that Honeywell can terminate a purchase order only within 30 days after issuance, rendering Section 2.4 both meaningless and in contradiction of Section 2.3. *See Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009) ("[T]he court may not read [an] agreement to make any of its terms meaningless, or construe its language to render particular provisions 'mere surplusage'." (citations omitted)). Plaintiffs' interpretation also would require the Court impermissibly to rewrite the SSA. *See Bank of NY Mellon Tr. Co., N.A. v. Morgan Stanley Mtge. Cap., Inc.,* 821 F.3d 297, 307 (2d Cir. 2016) (holding that courts "are not free to rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction[.]" (internal citations omitted)). If the parties intended to constrict Honeywell's ability to terminate a purchase order within 30 days of issuance, they would have said that. Instead, Honeywell may terminate an order "upon 30 days prior written notice." (Compl. Ex. A § 2.3.) By its plain terms, Section 2.3 does not, and logically cannot, mean "within 30 days after Honeywell placed the order" (*see* ECF 27 at 6) and therefore Plaintiffs' first breach of contract claims should be dismissed.

2. **Section 2.3's termination provision is unambiguous.**

Plaintiffs' Complaint shows Honeywell did not terminate the Agreement. There Plaintiffs said Honeywell supposedly by conduct. (*See* Compl. ¶ 80.) Now, faced with the consequence of

that argument, Plaintiffs shift course to argue constructive termination. (ECF 27 at 9–10.) Neither works.

N.Y. Gen. Oblig. Law § 15-301 ends any argument: "If a written agreement or other written instrument contains a provision for termination . . . on written notice by one or either party, ***the requirement that such notice be in writing*** cannot be waived except by a writing signed by the party against whom enforcement of the waiver is sought or by his agent." *Id.* (emphasis added). And this Court obeys that rule: "[T]ermination clauses must be enforced as written . . . ." *See, e.g.*, *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15 Civ. 3371, 2015 WL 4461769, at *8 (S.D.N.Y. July 21, 2015).

There is nothing special, unique, or troublesome about enforcing Sections 2.3 and 2.4 as written. *See Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002) ("It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." (citations omitted)). As written, Section 2.3 mandates any termination be in writing—not by conduct and not by some sort of theory of constructive termination. (*See* Compl. Ex. A. § 2.3.) Because Plaintiffs do not plead Honeywell terminated the SSA under Section 2.3 in writing, there is no termination. And because Section 2.4's payment obligations apply *only* if "Honeywell terminates the Agreement under Section 2.3," Plaintiffs cannot recover damages. (*See* Compl. Ex. A § 2.4.)

**3. Payment becomes due upon receipt of the goods.**

Because Honeywell breached no provision of the SSA, Plaintiffs are entitled to no damages.[2] And under the SSA, Honeywell need not pay Plaintiffs for undelivered Products.

---

[2] Plaintiffs now concede they cannot recover storage costs from Honeywell under the SSA and have abandoned that claim for damages. (ECF 27 at 10 n.1.)

3

(Compl. Ex. A § 11.5 "Payment terms are net 75 days from the later of Honeywell's (a) receipt of a correct invoice and (b) *receipt of conforming Products or services . . . .*" (emphasis added)). Plaintiffs must recognize this because they have not plead that there are unpaid invoices. As Honeywell need not pay Plaintiffs for undelivered Products, Plaintiffs have no damages.

**B.     The Parties Did Not Modify the SSA.**

Plaintiffs do not dispute that the Section 24.1 of the SSA requires any modification to be in a writing expressly referring to it and signed by the parties. (Compl. Ex. A § 24.1.) After admitting there is no signed writing modifying the SSA, Plaintiffs argue that email communications can modify contract terms.[3] (ECF 27 at 10, 12, 13.) Perhaps, but that does Plaintiffs no good here because "[c]ontract modification requires proof of each element requisite to the formation of a contract, including 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms'." *Kaplan v. Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013) (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999)). Plaintiffs' Complaint lacks those elements.

First, the Complaint fails to allege a proper breach of contract claim. When pleading a breach of contract claim, "the complaint must at a minimum set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the documents comprising the agreement." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, No. 11 Civ. 4491, 2013 WL 1294519, at *13 (S.D.N.Y. Mar. 30, 2013), *aff'd*, 552 Fed. Appx. 13 (2d Cir. 2014). Plaintiffs have not expressly referenced the language of the purported modification

---

[3] Plaintiffs plead that the parties "jointly modified" the SSA through undisclosed email communications to "require" Plaintiffs to produce 112,000 units and exceed the lead times in the SSA. (Compl. ¶ 92.) This overly general argument, unsupported by the emails themselves showing the parties manifested mutual asset to all material terms, fails to plead the elements showing a contract modification occurred.

4

emails and have not attached a copy to the Complaint. Because that is required to show breach of the modified terms, Plaintiffs' second cause of action for breach of contract should be dismissed. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 123 (S.D.N.Y. 2010) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." (internal citation and quotation omitted)).

Second, the allegations about the purported modification emails are devoid of any offer, acceptance, or mutual intent, which makes this case factually distinct from the case Plaintiffs cite, *Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*, No. 15-CV-8292 (KMW), 2019 WL 1494398 (S.D.N.Y. Apr. 2, 2019). There, Ion sold electronics to Bed, Bath & Beyond ("BB&B") under a contract with various addenda that addressed calculating volume rebates for the sales. *Id.* at *2. A few months after the contract was signed, BB&B emailed Ion to modify the volume rebate provision under the original contract, and Ion responded "confirmed." *Id.* at *3. Because Plaintiffs cannot pinpoint (or allege) a single email exchange where Honeywell or Plaintiffs requested a modification, and the other party confirmed the change, *Ion Audio, LLC* is inapposite.

Likewise, the argument that Honeywell "modified" the agreement by terminating 12,000 units lacks merit because the SSA entitles Honeywell to terminate any Purchase Order within 30 days' prior written notice. (*See Supra Pt.* A.1.) Thus, Honeywell's invoking its contractual rights to cancel units of the Product cannot be construed as a modification of the SSA.

**C.      The Breach of Implied Covenant is Duplicative as the Breach of Contract Claims.**

"[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative." *Alter v. Bogoricin*, No. 97 CIV. 0662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997). "A claim for violation of the covenant survives a motion to dismiss ***only*** if it is based on allegations different from those underlying the breach of contract claim, ***and*** the

5

relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (emphasis added). Plaintiffs' implied covenant claim does not meet that test because it is a mere restatement of the breach of contract claims.

Plaintiffs, of course, think they are different, and they can squeeze into the tiniest of exceptions to this very broad bar by charging Honeywell with breaching the implied covenant of good faith and fair dealing for "refusing to accept delivery of Outstanding Products" and "attempting to cancel the Purchase Orders for the Outstanding Products." (Compl. ¶ 100.) Plaintiffs' attempt fails because these allegations are the same as Plaintiffs' breach of contract claims. (*see id.* ¶¶ 78, 80, 94.) There is nothing "distinct and independent" about them. (*See* ECF 27 at 13–14.) Plaintiffs even rely on ***the same*** paragraphs from the Complaint (¶¶ 65–67) in support of both their breach of contract claims and implied covenant claim. (ECF 27 at 6, 9, and 13.) Thus, the claim fails as a matter of law. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant.").

Finally, the injury alleged for the breach of contract claims and the good faith and fair dealing claim is the exact same—damages of $2,966,459.44—thereby foreclosing separate causes of action. *See JN Contemp. Art LLC*, 29 F. 4th at 118 (upholding district court's dismissal of implied covenant claim as duplicative and reasoning that "[e]ven accepting JN's arguments that it sets out a different factual basis for [the implied covenant] claim than the factual basis set out in its breach of contract claim, the damages sought for both claims would be the same").

**D.     Plaintiffs' Fraud Claims are Not Extraneous or Collateral to the SSA.**

Plaintiffs conceded Honeywell owed no legal duty beyond the SSA and that the fraud claims do not seek special damages unrecoverable under the contract. (ECF 27 at 14.) But they also cannot show that the fraud claims are extraneous or collateral to the SSA and so the claims should be dismissed.

To decide if an alleged misrepresentation is collateral to a contract, courts look to "whether the contract itself speaks to the issue." *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 427 (S.D.N.Y. 2004). Plaintiffs' fraud claims are based on Honeywell issuing purchase orders and then not accepting delivery of the Products. (Compl. ¶¶ 105, 108, 121, 124.) As argued in Honeywell's opening brief, which Plaintiffs do not dispute, issuance of purchase orders and delivery are both explicitly covered under the SSA. (*Id.* Ex. A §§ 3.1, 12.1.)

So, instead, Plaintiffs ask the Court to believe the alleged misrepresentations are not covered under the SSA because they are based on "increases in demand" and "expedited timing" of delivery. (ECF 27 at 15.) But demand increases are covered under Section 6.2, "Supplier agrees to work to written forecasts issued by Honeywell upon request (**"Forecasts"**) and to manage its build schedule and/or inventory *to accommodate fluctuations in the Forecast* to ensure an uninterrupted flow of Products to Honeywell." (Compl. Ex. A § 6.2 (emphasis added).) And delivery is covered under the SSA because Honeywell has "the right to change delivery schedules." (*Id.* Ex. A § 12.1.)

Plaintiffs are just seeking to recast breach of contract claim as fraud. But as the Southern District of New York has consistently held, "[w]here the alleged fraud concerns the performance of a contract, as it does here, the claim is treated in New York as one sounding in contract rather than tort." *Paper Corp. of U.S. v. Schoeller Tech. Papers, Inc.*, 742 F. Supp. 808 (S.D.N.Y. 1990) (citation omitted). Thus, the claims must be dismissed.

**E.     Plaintiffs' Negligent Misrepresentation Claim Fails.**

Plaintiffs concede that no special relationship exists in arm's-length transactions. (ECF 27 at 16.) They also do not dispute that the SSA "ha[d] been negotiated at arms- length between the parties who are experienced and knowledgeable in the matters contained in this Agreement . . . ." (Compl. Ex. A § 24.6.) This should be the end, but instead Plaintiffs ask the Court to believe that the parties' relationship eventually "evolved" into special relationship because Honeywell had "extensive experience" and "superior knowledge" with the U.S. government. (ECF 27 at 16–17; Compl. ¶ 137.) This argument fails because it relates to conduct that occurred *after* Honeywell's and Plaintiffs' relationship began.

In the commercial context where a contract exists, a special relationship of trust or confidence must have existed *before* the transaction giving rise to the alleged wrong, not because of it. *See, e.g.*, *Emigrant Bank v. UBS Real Est. Sec., Inc.*, 49 A.D.3d 382, 385 (1st Dep't 2008); *Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v. Salomon Bros. Int'l Ltd.*, 251 A.D.2d 137, 138 (1st Dep't 1998) ("[T]he requisite high degree of dominance and reliance [for a confidential relationship] must have existed prior to the transaction giving rise to the alleged wrong, and not as a result of it."). Plaintiffs have not shown there was a special relationship between them and Honeywell before the SSA was entered.

The SSA also expressly disclaims a special relationship: "Nothing in this Agreement will be construed to place Supplier and Honeywell in an agency, employment, franchise, joint venture, or partnership relationship." (Compl. Ex. A § 24.1.) Plaintiffs seek to cover up their deficiencies, trying to paint Honeywell as having "superior knowledge" and "extensive experience" with the U.S. government, but these broad strokes cover nothing and create nothing, including facts supporting a special relationship between Honeywell and the Plaintiffs. *See MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 235–36 (1st Dep't 2011) (noting that a

defendant's "superior knowledge of the particulars of its own business practices is insufficient to" establish a special relationship, and "[g]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties").

This claim also fails because "[a]ctions for . . . negligent misrepresentation will not lie when the factual underpinning for the claim is duplicative of a breach of contract claim." *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 CIV. 0432 (LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008). Looking past Plaintiffs' smoke and mirrors about the U.S. government, the negligent misrepresentation claim—like the rest of Plaintiffs' claims—rests on the notion that Honeywell supposedly misrepresented its need for 112,000 units of the Product and refused to accept delivery of the outstanding Products. (*Compare* Compl. ¶¶ 80, 92, 94, 100, 105, 108, 109, 128, 136, 138.) And it is clear from the face of the Complaint that Plaintiffs allege no "special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Thus, the claim must be dismissed as duplicative.

### F. Plaintiffs Cannot Recover Punitive Damages.

This is a simple contract dispute between private parties for which punitive damages are unavailable under New York law, and Plaintiffs' claim for punitive damages should therefore be dismissed. *See Airport Mart Inc. v. Dunkin Donuts Franchising LLC*, No. 18-CV-170 (KMK), 2019 WL 4413052, at *8–9 (S.D.N.Y. Sept. 16, 2019) (dismissing plaintiff's punitive claim reasoning that "this was a contract between two private parties, where the alleged harm befell one of the parties." (citations omitted)).

And despite Plaintiffs' tales of woe, they muster no facts to support the key fact they need for this claim to survive the motion to dismiss: Plaintiffs must plead that Honeywell's actions were ***aimed at the public***. *See, e.g.*, *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt*

*Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir.1996) (requiring "a pattern of conduct harming the general public" for punitive damages). Realizing their pleading's failure, Plaintiffs hurl accusations, untethered to the Complaint, to make outrageous and unfounded claims. (ECF 27 at 1, 18 (falsely accusing Honeywell of profiteering and greed to try to sway the Court's decision).) But if the Court looks through these wild accusations to the details in the Complaint, the Court will see that Plaintiffs are the only ones claiming to be alleged victims. Because this case is not about the U.S taxpayers and is about Honeywell's contract rights, punitive damages are inappropriate and unavailable.

## CONCLUSION

For the reasons set forth above, and as stated in Honeywell's Memorandum on Law in Support of its Motion to Dismiss Plaintiffs' Complaint, Honeywell asks the Court to dismiss Plaintiffs' Complaint with prejudice.

Dated: September 8, 2022
New York, New York

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

*/s/ Lisa A. Herbert*
Lisa A. Herbert
330 Madison Avenue, 27th Floor
New York, New York 10017
Telephone: (212) 413-9000
Email: lisa.herbert@nelsonmullins.com

Erika C. Birg (*admitted pro hac vice*)
Avery G. Carter (*admitted pro hac vice*)
201 17th Street NW | Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6165
Email: erika.birg@nelsonmullins.com
Email: avery.carter@nelsonmullins.com
*Counsel for Defendant Honeywell International Inc.*