UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                  :
SHINANO KENSHI CORP., et al.,                     :
                                                  :
                              Plaintiffs,         :         22 Civ. 3704 (LGS)
                                                  :
              -against-                           :              ORDER
                                                  :
HONEYWELL INTERNATIONAL INC.,                     :
                                                  :
                              Defendant.          :
---------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        Plaintiffs Shinano Kenshi Corporation and Shinano Kenshi Co., Ltd. bring this action

against Defendant Honeywell International Inc., asserting six causes of action related to the

parties' 2017 agreement whereby Plaintiffs agreed to supply, and Defendants agreed to purchase,

certain personal protective equipment ("PPE").  After demand for PPE surged in 2020 due to the

COVID-19 pandemic, Defendant increased its purchase orders pursuant to the contract.  When

demand cooled, Defendant delayed shipment of and eventually cancelled many of the

outstanding orders.  In response, Plaintiffs brought this action.  Defendant moves to dismiss.  For

the reasons below, the motion is granted, though Plaintiffs may replead the breach of contract

claim.

## I.    BACKGROUND

        The following facts are taken from the Complaint and are presumed to be true for

purposes of adjudicating Defendant's motion.  *See Sabir v. Williams*, 52 F.4th 51, 54 (2d Cir.

2022).

        Defendant is a major manufacturer of various products, including PPE, and frequently

contracts with the federal government.  Plaintiffs manufacture the essential operating part, a

custom blower (the "ASPINA Blower"), used in Defendant's Powered Air Purifying Respirator ("PAPR") unit, an individual breathing PPE device.

In October 2017, Plaintiffs entered into a Strategic Supplier Agreement (the "Agreement") with Defendant to manufacture the ASPINA Blower for use in the PAPR unit. The Agreement required Defendant to place orders for the ASPINA Blower via individual purchase orders. The Agreement further provided that "[e]ach Purchase Order will be deemed immediately accepted and binding upon [Plaintiffs]." The Agreement in § 2.3 gave Defendant the right to "terminate this Agreement for convenience upon 30 days' prior written notice" and the right to "terminate any Purchase Order without liability on the part of [Defendant] upon 30 days' prior written notice." The Agreement further states in § 2.4:

> Termination is without liability to Honeywell except for payment for completed Products delivered and accepted by Honeywell before the date of termination; provided that if Honeywell terminates this Agreement under Section 2.3 above, Honeywell's sole liability . . . and [Plaintiffs'] sole and exclusive remedy, is payment for (A) Products received and accepted by Honeywell before the date of termination, and (B) with respect to custom Products that are within lead time under the terminated Purchase Order(s), unique raw materials, work in progress and finished Products, which shall be delivered to Honeywell.

In 2018 and 2019, Plaintiffs sold Defendant 1,936 ASPINA Blowers. In March 2020, due to COVID-19, Defendant requested dramatically more units from Plaintiff, citing a request from the federal government to expand production to 5,000 to 10,000 units per month and explore the ability to provide up to 15,000 to 20,000 units per month. On March 30, 2020, Defendant informed Plaintiffs that it would need 3,000 ASPINA Blowers per week based on a "commitment from the U.S. Government," and Plaintiffs agreed to ramp up production. At the same time, Plaintiffs told Defendant that Defendant could not request to cancel the request, while "everyone within [Plaintiffs'] team is working very hard and strive our best to save lives and

help people."  In the following months, Defendant continued to increase its requests for ASPINA Blowers, and by early July 2020, Defendant had placed orders for 112,000 units, all due by the end of 2020.  Defendant repeatedly stated that the units were ordered based on a commitment from the federal government.

On August 21, 2020, Defendant contacted Plaintiffs seeking to delay the delivery schedules on its orders.  Defendant requested to cancel purchase orders for 12,000 units, which Plaintiffs refused.  In its request, Defendant cited government restrictions on the export of respiratory equipment outside of the U.S.  The parties eventually agreed to cancel 6,000 orders due to the export restrictions.  Through October 13, 2020, Defendant continued to represent it would require the bulk of its previous orders.  On October 27, 2020, Defendant requested that Plaintiffs delay shipment of 24,500 units due to "inventory balance sheet concerns."  Through the end of 2020 and into 2021, Defendant continued to request that Plaintiffs delay shipment.

On February 19, 2021, Defendant asked Plaintiffs for the amount outstanding on all units, completed and in process, for production, shipping, holding charges and storage costs, assuming the outstanding orders were cancelled.  Plaintiffs responded that its outstanding costs were $2,806,459, assuming cancellation rather than completion.  In correspondence between the parties, Defendant informed Plaintiffs of a "cancellation of the Government order."  Defendant demanded that it be allowed to pay about half of what Plaintiffs claimed it was owed, and Plaintiffs refused.  In total, Plaintiffs remain in possession of 35,184 completed units for which Defendant refuses to accept delivery and 11,500 component kits, partially assembled to use in ASPINA Blowers.  Plaintiffs seek payment of the $2,806,459 plus storage costs.

## II.   STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (cleaned up).  "In reviewing a motion to dismiss, [a court] may consider not only the facts alleged in the complaint, but also documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Sabir*, 52 F.4th at 54 (cleaned up).  "Contractual claims unambiguously barred by an agreement between the parties may be determined on a motion to dismiss." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 122 (2d Cir. 2022).

## III.   DISCUSSION

Defendant's motion to dismiss the Complaint is granted.  As explained below, Plaintiffs are granted leave to replead the breach of contract claim.

As a threshold matter, New York law applies to all claims.  The Agreement includes a choice of law provision stating that New York law will govern "all transactions hereunder and the parties['] relationship in connection therewith or any related claims whether founded in

4

contract, tort or otherwise."  The parties also rely on New York law in their motion papers.  *See*

*Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 922 (N.Y. 2015) ("New York

courts should not engage in any conflicts analysis where the parties include a choice-of-law

provision in their contract. . . . [B]y including a choice-of-law provision in their contracts, the

parties intended for only New York substantive law to apply."); *In re Snyder*, 939 F.3d 92, 100

n.2 (2d Cir. 2019) ("[I]mplied consent is sufficient to establish the applicable choice of law."

(cleaned up)).  New York law applies.

### A.    Breach of the Agreement

Defendant's motion to dismiss Plaintiffs' breach of contract claim for Defendant's non-

payment for the outstanding ASPINA Blowers is granted because, although the pleaded facts are

sufficient to support a claim, the Complaint as pleaded does not rely on a viable theory of breach.

Under New York law, a breach of contract claim requires a plaintiff to allege that "(1) a contract

exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its

contractual obligations; and (4) defendant's breach resulted in damages."  *34-06 73, LLC v.

Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (citations omitted).

If construed in favor of Plaintiffs, the Complaint alleges facts showing that Defendant

breached the Agreement.  The Complaint alleges that, on February 19, 2021, Defendant sent

Plaintiffs what can be construed as notice of termination of the Agreement.  The Complaint

alleges, "[I]n February 2021 . . . Honeywell expressed that it sought to cancel and scrap all the

Outstanding Products."  Defendant asked Plaintiffs "for the amount outstanding on all units,

completed or otherwise, assuming cancellation, including costs of production, shipping, holding

charges, and storage costs."  Plaintiffs responded with a dollar amount "assuming cancellation

rather than completion."  Both Defendant's request for information and Plaintiffs' response are

consistent with the Agreement's provision for remedies upon termination of the Agreement;
§ 2.4 entitles Plaintiffs to "payment for . . . unique raw materials, work in progress and finished
Products" if Defendant terminates the entire Agreement by written notice.  That is the
information that Defendant requested and Plaintiffs provided.  In contrast, the provision for
termination of a purchase order results in no liability to Defendant for products that are not yet
delivered or completed.

Defendant is correct that that the Complaint's breach of contract claim does not plead that
the February 19 notice was a notice of termination of the Agreement.  Nevertheless, the cause of
action incorporates by reference all of the relevant factual allegations and the relevant
Agreement provisions alleged earlier in the Complaint, and the claim asserts that Plaintiffs are
entitled to payment because Honeywell terminated the Agreement.  Plaintiffs are therefore
granted leave to replead the first cause of action to assert failure to pay upon termination of the
Agreement as outlined above.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave
[to amend] when justice so requires.").  If Plaintiffs decline to do so, the Complaint will be
dismissed with prejudice.

Defendant argues that its February 19, 2021, communication was a notice of termination
of purchase orders (resulting in no further payment obligation), not notice of termination of the
Agreement (with explicit contractual payment obligations).  That is an issue to be raised at
summary judgment or trial and does not go to the sufficiency of a repleaded complaint.  The
motion to dismiss the First Cause of Action for breach of contract is granted with leave to
replead.

Plaintiffs are apprised that if they file an amended Complaint, they may not seek punitive
damages or storage fees.  "The pleading elements required to state a claim for punitive damages

6

as an additional and exemplary remedy when the claim arises from a breach of contract are: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of an egregious nature; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *In re Part 60 Put-Back Litig.*, 165 N.E.3d 180, 192 (N.Y. 2020) (cleaned up).  The Complaint does not contain factual allegations that satisfy these elements, nor does it suggest that repleading would cure this deficiency.  The Complaint alleges that Defendant profited from the sale of PPE during the COVID-19 pandemic and sold products "at very profitable margins."  As discussed below, Defendant's conduct is not actionable as an independent tort.  For this reason alone, and without reaching the three other requirements, a claim for punitive damages would be futile.

Additionally, as currently pleaded, the breach of contract claim seeks damages reflecting "storage fees for the Outstanding Products."  These fees are precluded by § 12.4 of the Agreement, which states that "[n]o extra charges of any kind, including charges for storage . . . will be imposed by Supplier."  Any proposed Amended Complaint shall not contain a demand for punitive damages or seek damages reflecting Plaintiffs' storage costs.

### B.      Breach of Alleged Modified Contract

As an alternative to the breach of contract claim, the Complaint alleges that the parties modified the Agreement, and that Defendant breached the Agreement as modified.  This claim is dismissed because the Complaint does not allege facts sufficient to show a valid modification. Section 24.1 states that the Agreement "may not be modified, extended, canceled or rescinded except in a writing signed by the parties which expressly references this Agreement."

The Complaint alleges that "the parties jointly agreed to modify the [Agreement] such that orders placed due to COVID-19 demand could not be scrapped or cancelled."  The

7

Complaint describes an email in which Plaintiffs "warned Honeywell that it could not 'request [to] cancel or scrap [the custom ASPINA Blower units] sometime in the future.'"  Even assuming Plaintiffs' assertion that an email exchange is a writing signed by the parties, this unilateral declaration by Plaintiffs is insufficient to modify the agreement.  The Complaint does not identify any writing that reflects the parties' mutual intent to override for COVID-19 orders the Agreement's provision that "Honeywell may terminate any Purchase Order without liability on the part of Honeywell upon 30 days' prior written notice."

The Complaint alleges a second modification, that "[p]ursuant to the parties' email communications and other correspondence, the parties jointly agreed to modify the [Agreement] such that [Plaintiff] was required to produce 112,000 . . . units between March and December 2020."  This allegation is not the basis for a claim for three reasons.  First, it is conclusory and does not identify any signed writing that referenced the Agreement and purported to modify it. Second, the implication that the parties had to modify the Agreement to obligate Plaintiffs to produce 112,000 units is at odds with the Agreement and other allegations in the Complaint.  No modification was necessary to obligate Plaintiffs to produce units; all that was necessary were purchase orders.  The Agreement directs, "Each Purchase Order will be deemed immediately accepted and binding upon Supplier."  Under the Agreement, Plaintiffs were obligated to produce the 112,000 units because they were subject to a series of purchase orders.  As the Complaint alleges, "By early July [2020], . . . Honeywell had placed Purchase Orders with Shinano for 112,000 ASPINA Blower units."

Plaintiffs suggest that the orders for 112,000 units constituted a modification because in aggregate, they exceeded the typical lead time and quantity contemplated by the Agreement. The argument is incorrect.  The Agreement contemplated such orders and included a special

provision not relevant here to deal with them.  Section 3.2 obligates Plaintiffs to accept a purchase order, "unless it requires delivery of Products in less than the Lead Time . . . or if the delivery quantity exceeds the Minimum Stocking Level, . . . in which case Supplier may reject such Purchase Order within 2 business days of receipt."  The Complaint does not suggest that Plaintiffs rejected the relevant purchase orders.  To the contrary, Plaintiffs accepted them and want to be paid for them.

Third and finally, even if the Agreement were "modified" to enable an order that was larger or quicker than contemplated by the Agreement, the termination provisions and liability provisions nevertheless apply to the resulting purchase order.  The Complaint does not allege that the Agreement was modified to excuse those provisions in the case of the orders for 112,000 units.  Section 3.1 states, "Any terms specific to such purchases different from those contained in this Agreement will be evidenced by a separate mutually agreed writing which references this Agreement."  Section 3.3 reiterates, "Purchase Orders will be governed exclusively by the terms and conditions of this Agreement and any additional or different terms and conditions contained in any Purchase Order, Purchase Order acknowledgment or acceptance are not binding on either party."  Accordingly, the Complaint's breach of modified contract claim is dismissed.

### C.    Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is dismissed because it is inconsistent with the express terms of the Agreement.  "Implicit in every contract under New York law is a covenant of good faith and fair dealing. . . .  However, the covenant only imposes an obligation consistent with other mutually agreed upon terms in the contract."  *Woodard v. Reliance Worldwide Corp.*, 819 F. App'x 48, 49 (2d Cir. 2020) (summary order) (cleaned up).  The Complaint alleges that Defendant breached this implied covenant by

refusing to accept delivery of the outstanding products and refusing to pay for them.  However, the Agreement expressly granted to Defendant "the right to change delivery schedules and temporarily suspend scheduled shipments, beyond the replenishment lead time of 5 business days."  In § 2.4, the Agreement also allocated to Plaintiffs the risk of loss on cancelled purchase orders, except when Defendant cancelled the entire Agreement.  Defendant's request that Plaintiffs "share the pain" of the U.S. government cancelling its order does not modify the terms of the Agreement.  An implied covenant cannot override the express terms of the parties' Agreement.  *See Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983) ("No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship."), *superseded by statute on other grounds*, N.Y. Lab. Law § 740, *as recognized in Leibowitz v. Bank Leumi Tr. Co. of N.Y.*, 548 N.Y.S.2d 513 (2d Dep't 1989); *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) (construing New York law) ("[T]he implied covenant of good faith cannot create duties that negate explicit rights under a contract."); *U.S. Bank Nat'l Ass'n v. 160 Palisades Realty Partners LLC*, No. 20 Civ. 8089, 2022 WL 743928, at *4 (S.D.N.Y. Mar. 10, 2022) (similar).  The implied covenant claim is dismissed.

### D.   Fraud

The fourth and fifth causes of action allege fraud.  Claim Four asserts a claim for fraudulent inducement -- that Defendant misrepresented to Plaintiffs that it had a commitment from the U.S. government to purchase PAPR units, and that Plaintiffs manufactured and stored the products in reliance on the misrepresentations.  Claim Five asserts that Defendant misrepresented to Plaintiffs that Defendant needed and would eventually accept delivery of ordered units.  The fraud claims are dismissed based on the Agreement's integration clause and

10

provisions that entitle Defendant to delay shipments, make non-binding forecasts and ultimately cancel the Agreement.

"To maintain a claim of fraud [in parallel to a breach of contract claim], a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted) (summarizing New York law); *accord Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 191 (1st Dep't 2017). Plaintiffs rely solely on the second theory -- a misrepresentation that is collateral to the contract. "A misrepresentation of present fact is collateral to the contract and supports a separate claim for fraud." *Am. Media, Inc. v. Bainbridge & Knight Lab'ys, LLC*, 22 N.Y.S.3d 437, 478 (1st Dep't 2016). "Where a plaintiff alleges, by contrast, that the defendant simply misrepresented its intent to perform under a contract, no separate claim for fraud will lie, and the plaintiff must instead bring an action for breach of contract." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018) (construing New York law). The parties dispute whether Defendant's alleged misstatements are collateral to the contract.

### 1. Misrepresentations regarding Defendant's Eventual Need

Defendant's alleged misrepresentations in Claim Five were nothing more than Defendant's exercise of its rights under the Agreement to change and postpone shipments, and are not collateral to the contract. Claim Five alleges that in August 2020, Defendant postponed delivery of units, in September and October reaffirmed that it still wanted the units, in December requested to hold further shipments, in January 2021 requested that some of the units be shipped

11

between January and June of that year, but in February cancelled all outstanding orders.

These allegations appear to reference existing orders that Honeywell suspended and then cancelled.  If so, Claim Five is barred by § 12.1, which states that "Honeywell reserves the right to change delivery schedules and temporarily suspend scheduled shipments."  Under § 2.3 Honeywell may terminate any purchase order or the entire Agreement.  In context, Defendant's statements of continued need communicated that Defendant was delaying shipment rather than cancelling the orders.  To the extent the alleged misstatements of continued need pertained to orders not yet placed, the claim is barred by § 6.2, which permits Defendant to make written forecasts but states, "Forecasts are not purchasing commitments and do not bind or obligate Honeywell in any way."  *See also Comora v. Franklin*, 97 N.Y.S.3d 734, 736 (2d Dep't 2019) ("The presence of disclaimers in a written agreement may preclude a claim of common-law fraud by rendering any resulting reliance unjustified.").  If the complaint is that Defendant ultimately cancelled orders after suggesting that it would not, the proper claim is breach of contract and not fraud.  *See Spinelli,* 903 F.3d at 209.

Because the Agreement speaks directly to the subject matter of the alleged misrepresentations, they are not collateral to the contract and cannot support a fraud claim.  *See Panwest NCA2 Holdings LLC v. Rockland NCA2 Holdings, LLC*, 166 N.Y.S.3d 534, 534-35 (1st Dep't 2022) ("[E]ven though the alleged misstatements and omissions related to matters of present fact, the matters in question were not collateral to the purchase agreement but were within the scope of the parties' rights and obligations under the terms of the purchase agreement."); *Orix Credit Alliance, Inc. v. R.E. Hable Co.*, 682 N.Y.S.2d 160, 161 (1st Dep't 1998) ("[F]ar from being collateral to the contract, the purported misrepresentation was directly related to a specific provision of the contract." (internal quotation marks omitted)); *see also*

*Oliver Wyman, Inc. v. Eielson*, No. 15 Civ. 5305, 2016 WL 5339549, at *6 (S.D.N.Y. Sept. 22, 2016) (dismissing New York common law fraud claims because the allegedly false statements concerned "subjects that were expressly covered by the [contracts]," including the disclaiming of the plaintiff's duty to maintain the defendants' employment).  Claim Five is dismissed.

### 2.   Misrepresentations regarding the Government Contract

The fraud claim based on Defendant's representations that it had a commitment from the U.S. government to purchase blower units is not collateral to the Agreement and is defeated by its integration clause.  The merger clause states that the Agreement "constitutes the entire agreement of Honeywell and [Plaintiffs] regarding the subject matter hereof" and "[n]o representation, warranty, course of dealing, or trade usage not contained or expressly set forth herein will be binding on [either] party."  Any purchase order entered into under the Agreement "shall be subject to the terms of th[e] Agreement."

Generally, the existence of an omnibus merger clause does not preclude a claim for fraudulent inducement.  *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 315 (2d. Cir. 1993) (describing New York law); *accord Northland E., LLC v. J.R. Militello Realty, Inc.*, 81 N.Y.S.3d 694, 698 (4th Dep't 2018); *Tradeshift, Inc. v. Smucker Servs. Co.*, No. 20 Civ. 3661, 2021 WL 4463109, at *7 (S.D.N.Y. Sept. 29, 2021).  However, in arm's-length transactions between sophisticated parties, courts in this District have found that, under New York law, integration clauses barred such claims.  *See, e.g.*, *Townsley v. Airxcel, Inc.*, No. 18 Civ. 1439, 2018 WL 3946449, at *6 (S.D.N.Y. Aug. 15, 2018) (dismissing fraudulent inducement claim under New York law on the basis of an integration clause and a clause stating the parties' non-reliance on external representations); *Woodberry v. Graham*, No. 14 Civ. 4816, 2017 WL 151617, at *8 (S.D.N.Y. Jan. 13, 2017) (finding that an integration clause "renders oral statements and emails

13

provided during negotiations or otherwise irrelevant" because "[u]nder New York law it is clear

that a fraud claim will not lie for a routine breach of contract"); *Transnat'l Mgmt. Sys. II, LLC v.

Carcione*, No. 14 Civ. 2151, 2016 WL 7077040, at *6-7 (S.D.N.Y. Dec. 5, 2016) (applying New

York law) ("[T]he alleged fraudulent misrepresentations . . . are not collateral or extraneous to

the contract, which included an integration clause stating that the Purchase Agreement is the

entire agreement among the parties . . . ." (cleaned up)).  Here, the Complaint shows that the

parties were dealing at arm's length and are sophisticated actors.  The Agreement expressly

states that it was "negotiated at arms length between parties who are experienced and

knowledgeable."  Although the Agreement is drafted in Defendant's favor, Plaintiffs are

presumed to have been aware of the allocation of risks and the trade-offs they were making in

exchange for Defendant's business.  *See Imero Fiorentino Assocs., Inc. v. Green*, 447 N.Y.S.2d

942, 943 (1st Dep't 1982) ("An individual who signs . . . a written contract . . . is conclusively

presumed to know its contents and to assent to them."); *Alessi Equip., Inc. v. Am. Piledriving

Equip., Inc.*, 578 F. Supp. 3d 467, 498 (S.D.N.Y. 2022) (same).

When taken together, the Agreement's integration clause and its express reservation of

Defendant's right to make non-binding predictions of its needs are enough to preclude any claim

for fraud.  *See Panwest NCA2 Holdings LLC*, 166 N.Y.S.3d at 534-35.  Given these provisions,

Plaintiffs' alleged reliance on representations outside the contract was unreasonable, and

therefore insufficient to support a claim for common law fraud.  Accordingly, the fraud claims

are dismissed.

### E.    Negligent Misrepresentation

The Sixth Cause of Action asserts a claim for negligent misrepresentation substantially

the same as the government contract fraud claim.  This claim is dismissed because of the lack of

a special or privity-like relationship.  "Under New York law, a negligent misrepresentation claim

requires (1) the existence of a special or privity-like relationship imposing a duty on the

defendant to impart correct information to the plaintiff; (2) that the information was incorrect;

and (3) reasonable reliance on the information."  *ICD Cap., LLC v. CodeSmart Holdings, Inc.*,

842 F. App'x 705, 706 (2d Cir. 2021) (summary order).  The New York Court of Appeals has

stated that the existence of a special relationship is generally best determined on a case-by-case

basis, contemplating "[p]rofessionals, such as lawyers and engineers" as examples of such a

relationship.  *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996); *see also Greenberg,*

*Trager & Herbst, LLP v. HSBC Bank USA*, 958 N.E.2d 77, 84 (N.Y. 2011) (rejecting claims of a

duty arising out of "an arm's length borrower-lender relationship . . . . even if there is a long-

standing relationship between the customer and a particular bank employee or if the parties are

familiar or friendly" (cleaned up)); *Murphy v. Kuhn*, 682 N.E.2d 972, 975 (N.Y. 1997) (finding

no such duty was owed by an insurance agent to an insured, given specific facts of the

relationship).

        Plaintiffs concede that "in ordinary arms-length transaction[s], a special relationship does

not exist."  The Agreement expressly states that it "has been negotiated at arms length" and

disclaims various special relationships between the parties, including a joint venture or

partnership relationship.  Nevertheless, the Complaint alleges that Defendant owed a special duty

to Plaintiffs because of Defendant's experience dealing with the federal government, its superior

knowledge regarding a commitment from the U.S. government and Plaintiffs' foreseeable

reliance on Defendant's statements.  These allegations fail to establish a privity or privity-like

relationship because, even though the Complaint alleges that Defendant "has long had close ties

to the U.S. government," the same is true of many companies and cannot be the basis of finding

a privity-like relationship between them and all of their subcontractors.  Plaintiffs and Defendant

entered into an arm's-length relationship and not the necessary privity-like relationship.  *See ICD*

*Cap., LLC*, 842 F. App'x at 706 ("Because the transaction at issue is an arms-length stock

purchase between two sophisticated entities, we agree with the district court that [the defendant]

did not owe [the plaintiff] a special duty.").  The negligent misrepresentation claim is dismissed.

*     *     *

For the foregoing reasons, the motion to dismiss is **GRANTED.**  By **March 21, 2023**,

Plaintiffs may file an Amended Complaint, solely for the purpose of repleading the breach of

contract claim as described above.  If no such Amended Complaint is filed, the Complaint will

be dismissed with prejudice.  If the parties prefer to enter into settlement discussions in light of

this opinion, they may file a letter seeking an adjournment of the above date.

The Clerk of Court is respectfully directed to close the motion at Dkt. 25.

Dated: March 9, 2023
    New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

16