UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHINANO KENSHI CORPORATION, and SHINANO KENSHI CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> HONEYWELL INTERNATIONAL INC., <br><br> Defendant. | No. 1:22-cv-3704 (LGS) |

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S MOTION
# TO DISMISS THE FIRST AMENDED COMPLAINT

NELSON MULLINS RILEY & SCARBOROUGH LLP

Lisa A. Herbert
330 Madison Avenue, 27th Floor
New York, New York 10017
Telephone: (212) 413-9000
Email: lisa.herbert@nelsonmullins.com

Erika C. Birg (*admitted pro hac vice*)
201 17th Street NW | Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6165
Email: erika.birg@nelsonmullins.com

Cory B. Patterson (*admitted pro hac vice*)
One Wells Fargo Center
301 S. College Street
Charlotte, North Carolina 28202
Telephone: (704) 417-3154
Email: cory.patterson@nelsonmullins.com

*Counsel for Defendant Honeywell International Inc.*

The Court should dismiss Plaintiffs Shinano Kenshi Corporation and Shinano Kenshi Co., Ltd.'s (collectively, "Shinano" or "Plaintiffs") First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule(s)") 12(b)(6).

## PRELIMINARY STATEMENT

The Court should dismiss Shinano's First Amended Complaint, which pleads one claim for breach of contract with two theories, because neither theory can succeed under the plain language of the Strategic Supplier Agreement ("Agreement"). The Court already addressed and rejected Shinano's first theory—that Defendant Honeywell International Inc. ("Honeywell") could not terminate purchase orders—without leave to replead. Although the Court allowed Shinano to replead that Honeywell terminated the Agreement by email, Shinano's second theory is barred by the Agreement itself. Under Section 2.3, Honeywell may terminate the Agreement for convenience upon thirty days' prior written notice. Section 24.2 of the Agreement requires all notices be given in writing and served either personally or via overnight delivery to Jim Rideout of Shinano Kenshi Americas, with a copy to Nick Lauro of Shinano Kenshi Corp. Shinano does not, and cannot, allege that any of the requirements of Section 24.2 were met and, therefore, the claim fails.

Because the First Amended Complaint states no claim upon which relief can be granted, Shinano is not entitled to monetary damages, specific performance, or any other relief. Accordingly, Honeywell asks this Court to dismiss Shinano's First Amended Complaint in its entirety, with prejudice, and without leave to further replead.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

A. **The Court Limited Shinano's Right to Replead.**

This Court previously granted Honeywell's motion to dismiss the original Complaint in its entirety (the "Dismissal Order"). (Dkt. 51.) The Court granted Plaintiffs leave to replead just one theory: the February 19 email terminated the Agreement. (Dkt. 51 at 5, 6.)

The Court rejected and did not grant the right to replead any other theories, holding "*the provision for termination of a purchase order results in no liability to Defendant for products that are not yet delivered or completed*." (Dkt. 51 at 6 (emphasis added).) Thus, the Court ruled on and disposed of Plaintiffs' first theory of recovery, holding Honeywell could terminate purchase orders without liability for products not yet delivered. (*Id.*)

B. **The Agreement Governs the Outcome.**

Honeywell and Shinano signed the Agreement in which Shinano agreed to supply Honeywell with the AIR-PUMP ASSY (the "Product"), a component of Honeywell's Powered Air Purifying Respirators ("PAPR") in 2017. (Dkt. 52 ("Am. Compl.") ¶ 19; Ex. A.) New York law governs the Agreement's interpretation. (*Id.* Ex. A § 24.3.) The parties acknowledged that the Agreement "ha[d] been negotiated at arms length between parties who are experienced and knowledgeable in the matters contained in this Agreement . . . ." (*Id.* Ex. A § 24.6.)

The parties agreed that Honeywell would issue purchase orders for the Product to Shinano, and Shinano would deliver the Product to Honeywell. (Am. Compl. Ex. A §§ 3.1 and 12.1.) "Honeywell reserve[d] the right to change delivery schedules and temporarily suspend scheduled shipments, beyond the replenishment lead time of 5 business days." (*Id.* Ex. A § 12.1.) The parties further agreed that Shinano would warehouse stocked Products at its facility with no responsibility on Honeywell to pay for that storage. (*Id.* Ex. A § 12.4; *id.* Ex. A. at Ex. B.)

Pursuant to the Agreement, Shinano could invoice Honeywell only after it delivered the Products. Section 11.5 of the Agreement provides that "[p]ayment terms are net 75 days from the later of Honeywell's (a) receipt of a correct invoice and (b) receipt of conforming Products or services . . . ." (Am. Compl. Ex. A. §§ 11.5 & 11.6.) The Agreement further specifies when Honeywell can terminate purchase orders or the entire contract. Under Section 2.3, "Honeywell may terminate the Agreement for convenience upon 30 days' prior written notice. Honeywell may terminate any Purchase Order without liability on the part of Honeywell upon 30 days' notice." (Am. Compl. Ex. A § 2.3.) The Agreement further provides that "[t]ermination is without liability to Honeywell except for payment for completed Products delivered and accepted by Honeywell before the date of termination . . . ." (*Id.* Ex. A § 2.4.) But if, and only if, Honeywell terminated the Agreement under Section 2.3, then "Honeywell's sole liability to [Shinano], and [Shinano's] sole and exclusive remedy, is payment for (A) Products received and accepted by Honeywell before the date of termination, and (B) with respect to custom Products that are within lead time under terminated Purchase Order(s), unique raw materials, work in progress, and finished Products, which shall be delivered to Honeywell." (*Id.* Ex. A § 2.4.)

The Agreement specifies the required method and means for delivery of formal notices, like the notice required for termination of the Agreement in Section 2.3:

> [a]ll notices, requests, demands and other communications under this agreement ***must be in writing*** and will be deemed to have been duly given (a) on the date of service if ***served personally on the party to whom notice is to be given***, (b) on the first business day after delivery to ***Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service***, properly addressed, ***to . . . [for Shinano] Jim Rideout,*** Western District Manager . . . Shinano Kenshi Americas, 6065 Bristol Parkway, Culver City, CA 90230, ***with a copy to Nick Lauro,*** Vice President of Financing . . . Shinano Kenshi Corp., 6065 Bristol Parkway, Culver City, CA 90230.

(Am. Compl. Ex. A § 24.2 (emphases added).)

Finally, the Agreement contained an entire agreement provision which provides:

> This Agreement, together with any previously executed agreement(s) pertaining to confidentiality and/or non-disclosure, constitutes the entire agreement of Honeywell and [Shinano] regarding the subject matter hereof, superseding all prior agreements or understanding, written or oral and it may not be modified, extended, cancelled or rescinded except in a writing signed by the parties which expressly references this Agreement . . . . No representation, warranty, course of dealing, or trade usage not contained or expressly set forth herein will be binding on with (sic) party.

(Am. Compl. Ex. A § 24.1.)

## C. Honeywell Exercised its Contractual Rights and Did Not Terminate the Agreement.

Honeywell issued purchase orders to Shinano for 109,600 units of the Product. (Am. Compl. ¶ 40.)

In August 2020, Honeywell invoked its contractual rights to cancel purchase orders and modify the delivery schedule due to a decrease in demand. (Am. Compl. ¶¶ 64, 65, 69.) In early 2021, relying on the express terms of the Agreement, Honeywell notified Shinano it could not yet accept the outstanding units and requested Shinano continue to hold them. (*Id.* ¶ 76).

On February 19, 2021, Honeywell emailed Shinano asking Shinano to cancel and scrap units. Honeywell further "asked for the amount outstanding on all units, completed or otherwise, *assuming cancellation*, including costs of production, shipping, holding charges and storage costs." (Am. Compl. ¶¶ 83, 101 (emphasis added).) Shinano contends this is the sole written communication constituting notice of Honeywell's purported termination of the Agreement. Shinano does not allege that Honeywell provided written notice of its termination of the Agreement by personal service (or overnight delivery) to Jim Rideout, Western District Manager

5

of Shinano Kenshi Americas with a copy to Nick Lauro, Vice President of Financing of Shinano Kenshi Corporation.

## ARGUMENT

**A. Standard of Review**

    **1.    Reviewing Motions to Dismiss**

A Rule 12(b)(6) motion to dismiss should be granted if a plaintiff's factual allegations do not show the right to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); Rule 8. This means the complaint must present "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A motion to dismiss should be granted 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct'." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

For a Rule 12(b)(6) motion, the Court may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Sabir v. Williams*, 37 F.4th 810, 814 (2d Cir. 2022). "On a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself, which by definition is integral to the complaint." *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011)).

    **2.    Reviewing Breach of Contract Claims**

To prove breach of contract under New York law, Shinano must prove (1) existence of a contract, (2) performance of the contract by Shinano, (3) breach by Honeywell, and (4) damages. *Moreno-Godoy v. Kartagener*, 7 F. 4th 78, 85 (2d Cir. 2021). "Contractual claims unambiguously barred by an agreement between the parties may be determined on a motion to dismiss." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F. 4th 118, 122 (2d Cir. 2022); *see also Beth*

*Israel Med. Ctr. v. Verizon Bus. Network Services, Inc.*, 11 CIV. 4509 RJS, 2013 WL 1385210, at *2 (S.D.N.Y. Mar. 18, 2013) ("Dismissal of a breach of contract claim is appropriate where a contract's clear, unambiguous language excludes a plaintiff's claim.").

"In reviewing a written contract, a trial court's primary object is to give effect to the intent of the parties as revealed by the language they chose to use," and thus a court "ordinarily looks only at the wording used by the drafters who presumably understood what they intended." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 426 & 428 (2d Cir. 1992). "It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002) (citing *United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991)).

**B.      The Court Already Dismissed Shinano's Theory for Breach of Contract For Canceling Purchase Orders.**

This Court already addressed and dismissed Shinano's breach of contract claim arising out of Honeywell's termination of purchase orders because it is not a viable theory of breach, holding "the provision for termination of a purchase order results in no liability to defendant for products that are not yet delivered or complete" and granting Plaintiffs leave solely to replead breach of contract "to assert failure to pay upon termination of the Agreement as outlined above." (Dkt. 63 at 2.)

This Court issued a subsequent Order on April 11, 2023 (the "Reconsideration Order"), denying Plaintiffs' motion for leave to file a second amended complaint to amend Plaintiffs' dismissed claims for breach of implied covenant, fraud, and breach of contract regarding termination of purchase orders. The Court noted the motion sought reconsideration of the Dismissal Opinion, but concluded Shinano failed to identify "an intervening change of controlling

law, the availability of new evidence or the need to correct a clear error or prevent manifest injustice" for these dismissed claims. Moreover, the Court dispelled Shinano's suggestion that the Court failed to consider and interpret certain provisions of the Agreement:

> WHEREAS, Plaintiffs argued throughout their letter that the Opinion failed to construe the parties' agreement [ ] in their favor as the non-moving party. This argument fails because "***a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms***." In re World Trade Center Disaster Site Litig., 754 F3d 114, 122 (2d Cir. 2014) (internal quotation marks omitted). ***Plaintiffs presented arguments regarding the alleged ambiguity of the contract, which the Opinion considered and rejected.***

(Dkt. 63 at 2 (emphases added).)

Yet, against this Court's directive, Plaintiffs repleaded those same averments, arguing again Honeywell breached the Agreement by cancelling purchase orders. (*See, e.g.* Am. Compl. ¶¶ 5, 25, 98, 99, 103, 106.) Indeed, Shinano admitted in its March 21, 2023 letter motion seeking leave to file a second amended complaint, that the First Amended Complaint reasserts a claim for breach of contract based upon Honeywell's cancellation of purchase orders—a theory the Court already rejected. (Dkt. 53 at 1 ("Plaintiffs' revisions in the filed First Amended Complaint include elements not contemplated by the Order but which reflect that this Court failed to consider or otherwise construe material terms included in sections 2.3 and 12.1 of the Strategic Supplier Agreement.").) This Court again affirmed its Dismissal Order in the Reconsideration Order and made clear that the Court did not "fail to consider or otherwise construe materials terms;" instead, those terms were "considered," and the Court "rejected" Plaintiffs' interpretation a second time. (Dkt. 63 at 2.)

Plaintiffs are precluded from pleading this nonviable theory of breach again because the issue has been decided and is now the law of the case. *See Johnson v. Holder*, 564 F.3d 95 (2d Cir.

2009) (stating the law of the case doctrine commands that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case" unless "cogent and compelling reasons militate otherwise" (citing *United States v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir.2002) (internal quotation marks omitted))).

District courts in this Circuit "'routinely dismiss[] claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted'." *Benex LC v. First Data Merch. Servs. Corp.*, 14-CV-6393(JS)(AKT), 2016 WL 6683475, at *3 (E.D.N.Y. Nov. 14, 2016), *aff'd*, 695 Fed. Appx. 12 (2d Cir. 2017) (summary order) (quoting *Palm Beach Strategic Income, LP v. Salzman*, 457 Fed. Appx. 40, 43 (2d Cir. 2012) and *citing Pagan v. N.Y. State Div. of Parole*, No. 98-CV-5840, 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002) (dismissing wrongful termination, negligent misrepresentation, and intentional infliction of emotional distress claims after district court granted leave to replead only employment discrimination claims)). And that dismissal can and should be with prejudice. *Benex*, 2016 WL 6683475, at *3.

Plaintiffs' direct disregard for the law of this case should not be rewarded. Because the First Amended Complaint exceeds the Court's permission, the Court should summarily dismiss the First Amended Complaint in its entirety, or, in the alternative, dismiss those allegations that go beyond the limitations of the Order from the First Amended Complaint with prejudice.

### C. Honeywell did not Terminate the Agreement, and Thus Shinano Cannot Recover.

Shinano cannot recover because Honeywell never terminated the Agreement, which requires that Honeywell give written notice of termination pursuant to the express terms of the termination provision in Section 2.3 and the notice provision in Section 24.2. New York places great weight on complying with notice provisions.

"An 'enshrined principle' of New York law requires strict compliance with notice provisions . . . ." *Perini Corp. v. City of N.Y.*, 18 F. Supp. 2d 287, 295 (S.D.N.Y. 1998). And "[e]xpress conditions precedent, which are those agreed to and imposed by the parties themselves, must be literally performed." *Travelers Cas. And Sur. Co. v. Dormitory Auth-State of New York*, 735 F. Supp. 2d 42, 75 (S.D.N.Y. 2010); *Cf. Benex LC v. First Data Merchant Servs. Corp.*, No. 14-CV-6393(JS)(AKT), 2016 WL 1069657, at *4 (E.D.N.Y. Mar. 16, 2016) (internal citations omitted) (holding failure to comply with contract's notice provision bars recovery).

Shinano contends that a February 19, 2021 email wherein a Honeywell employee asked Shinano to cancel and scrap the units held by it and "asked for the amount outstanding on all units, completed or otherwise, assuming cancellation, including costs of production, shipping, holding charges and storage costs" effected termination of the Agreement. (Am. Compl. ¶ 101.) By the plain terms of the Agreement, this theory is barred because the email does not satisfy the express notice requirements of Section 24.2.

Section 2.3 of the Agreement says Honeywell may "terminate this Agreement for convenience upon 30 days' prior **written notice**." (Am. Compl. Ex. A § 2.3 (emphasis added).) And this is what Shinano mystically relies upon for relief. But the Agreement specifies the required method and means for delivery of notices:

> All **notices**, requests, demands and other communications under this agreement must be in writing and will be deemed to have been duly given (a) on the date of service if served personally on the party to whom notice is to be given, (b) on the first business day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service, properly addressed, to [for Shinano]" by giving notice to "Jim Rideout, Western District Manager, Shinano Kenshi Americas, 6065 Bristol Parkway, Culver City, CA 90230" with a copy to "Nick Lauro, Vice President of Financing, Shinano Kenshi Corp., 6065 Bristol Parkway, Culver City, CA 90230.

(*Id.* Ex. A § 2.4 (emphasis added).) Shinano does not, and cannot, allege that Honeywell provided written notice to cancel the Agreement to Jim Rideout or Nick Lauro by personal service or overnight mail as expressly required. Thus, there has been no termination for convenience.

Because the Agreement specifies the required method and means for delivery of notices and it is not alleged that Honeywell delivered any termination notice in the manner the Agreement demands, Shinano cannot establish that Honeywell terminated the Agreement. Just as this Court held that Plaintiffs cannot establish a claim for breach of a modified contract when the alleged modification did not comply with the strict requirements for modifications under Section 24.1 (Dkt. 51 at 7), so too must the Court dismiss the breach of contract claim because the February 2021 email fails to comply with the notice requirements in Section 24.2.[1] Because the parties agreed to an express notice provision which requires strict compliance, the February 19 email cannot officially terminate the Agreement. For these reasons, the First Amended Complaint should be dismissed in its entirety with prejudice.

## **CONCLUSION**

Shinano's First Amended Complaint fails to state a claim, and thus Shinano cannot obtain any relief from Honeywell. For these reasons, Honeywell asks the Court to grant its motion to dismiss the First Amended Complaint in its entirety, with prejudice, and without leave to further replead.

---

[1] *Kolmar Americas, Inc. v. Koch Supply & Trading, LP*, No. 10 Civ. 7905(JSR), 2011 WL 6382566, at *8 (S.D.N.Y. Dec. 15, 2011) is not persuasive authority, though Shinano cites it in the Amended Complaint. (Am. Compl. ¶ 102.) There the Court was dealing with a 30-day contract. The plaintiff sought to extend the right to demand delivery of goods indefinitely but had no such rights in the contract itself. *See id.* Instead, it was limited by "TO THE EXTENT FLEXIBILITY IS ALLOWED BY THIS AGREEMENT." *Id.* The Court concluded that flexibility ended with the thirty-day delivery window. Here the Agreement contained no such limits.

Dated: New York, New York
April 21, 2023

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

*/s/ Lisa A. Herbert*
Lisa A. Herbert
330 Madison Avenue, 27th Floor
New York, New York 10017
Telephone: (212) 413-9000
Email: lisa.herbert@nelsonmullins.com

Erika C. Birg (*admitted pro hac vice*)
201 17th Street NW | Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6165
Email: erika.birg@nelsonmullins.com

Cory B. Patterson (*admitted pro hac vice*)
One Wells Fargo Center
301 S. College Street
Charlotte, North Carolina 28202
Telephone: (704) 417-3154
Email: cory.patterson@nelsonmullins.com

*Counsel for Defendant Honeywell International Inc.*