UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHINANO KENSHI CORPORATION, and
SHINANO KENSHI CO., LTD.,

               Plaintiffs,

     - against -

HONEYWELL INTERNATIONAL INC.,

               Defendant.

Case No. 22 Civ. 3704 (LGS)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
Spencer Persson (*pro hac vice*)
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
spencerpersson@dwt.com

Mohammad B. Pathan
Kimberly N. Saindon
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
mohammadpathan@dwt.com
kimsaindon@dwt.com

*Attorneys for Plaintiffs ASPINA Incorporated and
Shinano Kenshi Co., Ltd.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND.......................................................................................................4

ARGUMENT ...............................................................................................................................6

I.      LEGAL STANDARD...........................................................................................6

II.     THE FAC SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6) ...............6

        A.     The FAC Sufficiently Alleges Breach of Contract as to Honeywell's Termination of the SSA. ......................................................................................7

             1.     Whether Honeywell Terminated Purchase Orders or the SSA is an Issue of Fact. ....................................................................................8

             2.     Honeywell's Argument that It Failed to Formally Terminate the SSA Must be Rejected.............................................................................8

        B.     Shinano's FAC Sufficiently Alleges that Honeywell Breached the SSA by Failing to Accept Delivery.....................................................................................12

        C.     Honeywell Also Breached Sections 2.3 and 2.4 of the SSA. .................................13

III.    The Court Should Certify for Interlocutory Appeal ...........................................................15

CONCLUSION............................................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)......................................................................................17

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
    426 F. Supp. 2d 125 (S.D.N.Y. 2005).....................................................................17

*Benex LC v. First Data Merch. Servs. Corp.*,
    2016 WL 1069657 (E.D.N.Y. Mar. 16, 2016) ..........................................................9

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
    893 F. Supp. 2d 395 (E.D.N.Y. 2012) ...................................................................18

*In re NYSE Specialists Secs. Litig.*,
    503 F.3d 89 (2d Cir. 2007)........................................................................................6

*Katel Ltd. Liab. Co. v. AT & T Corp.*,
    607 F.3d 60 (2d Cir. 2010).....................................................................................14

*Kolmar v. Koch Supply & Trading, LP*,
    2011 WL 6382566 (S.D.N.Y. 2011).........................................................12, 13, 15

*Kreiss v. McCown De Leeuw & Co.*,
    37 F. Supp. 2d 294 (S.D.N.Y. 1999)........................................................................8

*Leonard v. Pepsico, Inc.*,
    88 F. Supp. 2d 116 (S.D.N.Y. 1999)......................................................................19

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    784 F.3d 78 (2d Cir. 2015)..............................................................................12, 15

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007)...................................................................................20

*Nat'l Market Share, Inc. v. Sterling Nat. Bank*,
    392 F.3d 520 (2d Cir. 2004)......................................................................................7

*Network Pub. Corp. v. Shapiro*,
    895 F.2d 97 (2d Cir. 1990).....................................................................................17

*Perini Corp. v. City of New York*,
    18 F. Supp. 2d 287 (S.D.N.Y. 1998)........................................................................9

*Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*,
706 F.Supp.2d 350 (S.D.N.Y. 2009)............................................................14

*Thor 725 8th Ave. LLC v. Goonetilleke*,
138 F. Supp. 3d 497 (S.D.N.Y. 2015)........................................................10

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*,
735 F. Supp. 2d 42 (S.D.N.Y. 2010)...........................................................9

*Trireme Energy Holds., Inc. v. Innogy Renewables US LLC*,
2021 WL 3668092 (S.D.N.Y. Aug. 17, 2021) ...........................................19

*Uzdavines v. Weeks Marine, Inc.*,
418 F.3d 138 (2d Cir. 2005)......................................................................10

*Wilson v. Merrill Lynch & Co.*,
671 F.3d 120 (2d Cir. 2011).........................................................................6

*Wurtsbaugh v. Banc of Am. Sec. LLC*,
2006 WL 1683416 (S.D.N.Y. June 20, 2006) ...........................................15

**State Cases**

*A.H.A. Gen. Const., Inc. v. New York City Hous. Auth.*,
92 N.Y.2d 20, 699 N.E.2d 368 (1998).........................................................9

*Baker v. Norman*,
226 A.D.2d 301 (1st Dep't 1996) ...........................................................9, 10

*Beal Sav. Bank v. Sommer*,
8 N.Y.3d 318 (2007) ..................................................................................17

*Dellicarri v. Hirschfeld*,
210 A.D.2d 584 (3d Dep't 1994) ...............................................................10

*Madison Ave. Leasehold, LLC v. Madison Bentley Assocs. LLC*,
30 A.D.3d 1 (1st Dep't 2006), *aff'd*, 8 N.Y.3d 59 (2006) .....................9, 10

*Micro-Link, LLC v. Town of Amherst*,
65 N.Y.S.3d 399 (4th Dep't 2017)..............................................................14

*Stevens v. Publicis, S.A.*,
50 A.D.3d 253 (1st Dep't 2008) ...................................................................8

*Vardi v. Mutual Life Ins. Co. of New York*,
136 A.D.2d 453, 523 N.Y.S.2d 95 (1st Dep't 1988) ..................................14

**Federal Statutes**

28 U.S.C. § 1292(b) ...................................................................................................15, 16

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 6

Plaintiffs ASPINA Incorporated (formerly known as Shinano Kenshi Corporation) and Shinano Kenshi Co., Ltd. (collectively, "Shinano")[1] submit this memorandum of law in opposition to the motion to dismiss Shinano's First Amended Complaint (the "FAC") filed by Defendant Honeywell International Inc. ("Honeywell") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This Court is well acquainted with the factual background relating to this matter. In short, Honeywell ordered 109,600 ASPINA Blowers from Shinano to use in Honeywell's PAPR units which Honeywell anticipated would be in high demand during the COVID-19 pandemic. Honeywell represented to Shinano that it had purchase orders from the U.S. Government to purchase 112,000 units, causing Shinano to scale production during a historically difficult period. In reality, Honeywell only received a single purchase order from the U.S. Government for 16,950 units, and ultimately refused to accept delivery of or pay for 35,184 completed custom ASPINA Blowers or pay for any portion of 11,500 custom units in progress.

Honeywell has taken two positions to justify its refusal to pay for or accept delivery of units. First, Honeywell claims that it was entitled to and did in fact cancel all purchase orders under the parties' SSA, which Honeywell argues it could do without liability. Alternatively, Honeywell claims that it was entitled to suspend delivery of all units and did in fact do so, such that any cause of action by Shinano has not yet accrued. Honeywell also argues that it did not terminate the SSA. Honeywell maintains these positions in the current motion to dismiss.

This Court previously accepted Honeywell's first two arguments. In doing so, the Court ignored material terms of the SSA in section 2.3 that purchase orders could only be terminated "upon 30 days' written notice" and in section 2.4 that "custom Products that are within the lead

---

[1] Shinano respectfully adopts the abbreviations and definitions set forth in the FAC (Dkt. No. 52).

time under the terminated Purchase Order(s)" must be paid for and delivered. Section 2.3 makes no mention whatsoever of custom Products. The Court offered no explanation for its refusal to acknowledge these terms or construe them in a light most favorable to Shinano. The Court also ignored that section 12.1 only allows Honeywell to "temporarily suspend scheduled shipments," declining to accord any meaning to the word "temporarily" or construe it in the light most favorable to Shinano. These claims are thus part of Shinano's contract claim in the FAC and Honeywell offers no coherent argument that could lead to the dismissal of these theories.

This Court's Order on Honeywell's original motion to dismiss did find, however, that "the pleaded facts are sufficient to support" Shinano's claim for breach of contract due to termination of the SSA. Dkt. 51 at 5. Nevertheless, the Court held that as originally pled Shinano did "not plead that the February 19 notice was a notice of termination of the Agreement." *Id.* at 6. Shinano was therefore "granted leave to replead the first cause of action to assert failure to pay upon termination of the Agreement." *Id.*

Shinano amended the FAC as instructed, alleging that "on February 19, 2021" Honeywell terminated the SSA when it requested that "Shinano 'cancel and scrap all units currently being held by ASPINA.'" FAC, ¶¶ 83, 101. Honeywell's former Director of Procurement "confirmed that Honeywell's attempts to cancel units constituted a termination of the SSA under sections 2.3 and 2.4 of the agreement." *Id.*, ¶ 83. Shinano alleges that Honeywell breached the agreement when, thereafter, it refused "to pay for 'custom Products that are within lead time under the terminated Purchase Order(s), unique raw materials, work in progress and finished Products,' and refus[ed] to accept delivery of those products." *Id.*, ¶ 101.

Despite this Court already finding that these amendments would be sufficient to state a claim and that Honeywell's further arguments regarding this claim are best "raised at summary judgment or trial and do[] not go to the sufficiency of a repleaded complaint," Honeywell has again

2

moved to dismiss this claim. Dkt. No. 51 at 6. Shinano fulfilled this Court's instructions from the Order and Honeywell should not be given another bite at the apple through a thinly veiled motion for reconsideration. Honeywell's motion should be denied for this reason alone.

Even if the Court had not already decided that Shinano had pled sufficient facts to allege breach based on termination of the SSA, Honeywell has waived and is judicially estopped from arguing that Honeywell's termination does not comply with the SSA. Honeywell argues that under section 24.2 of the SSA any termination of the agreement had to be in writing and personally served or served via express mail on an employee who left the company in 2019 (before the events of this lawsuit), and that an email termination is necessarily defective. But—even if the FAC stated that the termination was via email—Honeywell waived any such argument and the ability to enforce section 24.2 when, through its own actions, it purported to cancel purchase orders and suspend shipments via email. It is black letter law that a contracting party may waive enforcement of any provision of a contract as evinced by its words or conduct. ***Here, every communication from Honeywell that purportedly cancelled orders or suspended shipments was via email.*** Honeywell cannot, on the one hand, claim that its own termination of the SSA could not occur via email but, on the other hand, urge that termination of orders and suspension of shipments could occur via email. Section 24.2 applies to "[a]ll notices, requests, demands and other communications." Honeywell cannot selectively apply this section when it suits its purposes.

Indeed, Honeywell is also judicially estopped from making any argument that email notice was ineffective. Honeywell argued to this Court that it effectively terminated purchase orders pursuant to the SSA in August 2020 and suspended shipments from August 2020 through February 2021. These arguments were successful because they caused this Court to dismiss Shinano's negligent misrepresentation claim. Honeywell is estopped from now taking the contrary position that email notice is ineffective under the SSA.

For these reasons, this Court must deny Honeywell's motion to dismiss in its entirety, with each of the FAC's breach theories moving into discovery. To the extent the motion to dismiss is granted, even in part, Shinano respectfully requests that the Court certify for immediate interlocutory appeal its refusal to construe material contract terms and permit Shinano to file a Second Amended Complaint, which included a claim for the breach of the covenant of good faith and fair dealing—the exact cause of action designed to combat the sort of "heads I win, tails you lose" arguments advanced by Honeywell. In failing to construe material terms in sections 2.3, 2.4, and 12.1, failing to construe those terms in a light most favorable to Shinano, and declining to give Shinano leave to amend despite a clear showing that amendment would not be futile through incorporation of facts obtained through eight months of discovery, this Court has abused its discretion. Review of these pure errors of law will conserve judicial and the parties' resources.

## FACTUAL BACKGROUND

At the outset of the COVID-19 pandemic, Honeywell proactively marketed PAPR units to the U.S. Government as a unique solution to protect frontline workers during the pandemic. FAC, ¶¶ 3, 28-29. Honeywell informed Shinano, who manufactured and produced custom ASPINA Blowers for the PAPR, that the U.S. Government committed to purchase 112,000 PAPR units. *Id.* ¶¶ 3, 30-32, 38-40. Based on these representations, Shinano exponentially increased the scale of its operations and accepted purchase orders for 109,600 ASPINA Blowers. *Id.* ¶¶ 32, 89. Former Honeywell employee, Alex Grigorow, testified that when Honeywell issues a purchase order it expects its "suppliers to rely on the purchase order and start making product." *Id.* ¶ 48; Persson Decl. Ex. D (136:3-7). Honeywell's former Senior Director Strategic Sourcing – PPE Division, Alban Gousset, agreed. *Id.* ¶ 48; Persson Decl. Ex. F (43:3-7). Gousset further testified that when Honeywell issued a purchase order, he would "expect that Honeywell would pay for the item being

purchased." *Id.* ¶ 48; Persson Decl. Ex. F (43:8-11). Prior to receiving the purchase orders, Shinano warned Honeywell that it could not "request cancel or scrap [the custom units]." *Id.* ¶ 38.

In fact, the U.S. Government only committed to purchase 16,950 PAPR units from Honeywell, issuing a single purchase order for that quantity in April 2020. *Id.* ¶¶ 4, 58. Gousset testified that Honeywell knew in July 2020 that demand for the PAPR units was only a fraction of the 109,600 units ordered from Shinano. *Id.* ¶ 60; Persson Decl. Ex. F (88:24-89:9, 89:18-23). Gousset admitted that "Honeywell should have told its suppliers when it started to learn the demand would be less" during the summer, but did not do so even though sales and marketing "knew that demand had cratered." *Id.*; Persson Decl. Ex. F (87:22-25, 88:3, 141:18-142:13).

Rather than informing Shinano that it had made a mistake, in August 2020 Honeywell began suspending shipments via email. *Id.* ¶ 64. On September 25, 2020, Honeywell requested to cancel 12,000 units via email—a quantity not reflected in any purchase order and without specifying a purchase order that was to be cancelled. *Id.* ¶¶ 41-47, 71. Aside from the attempt to cancel 12,000 units, which Shinano rejected, Honeywell continued to assure Shinano from August 2020 through February 1, 2021, that it still needed the ASPINA Blower units that it had ordered but simply on an extended timeline. *Id.* ¶¶ 70-78.

Notwithstanding the continued assurances that Honeywell would accept delivery, on February 19, 2021, Gousset requested that Shinano "cancel and scrap all units currently being held by ASPINA." *Id.* ¶ 83. At the time of termination, Shinano's stock included 35,148 completed units and 11,500 pieces held in Japan. *Id.* ¶ 83. Gousset requested that Shinano provide the costs assuming cancellation, including costs of production, shipping, holding charges, and storage costs. *Id.* ¶ 83. Gousset confirmed in his deposition that compensation to Shinano was appropriate, testifying that Section 2.3 of the SSA permitted Shinano to "provide any feedback or any impact of this cancellation." *Id.* ¶ 83; Persson Decl. Ex. F (153:10-13). Internal Honeywell documents

generated from around this time expressly note that the ASPINA Blowers were "NCNR," which Gousset testified stood for "non-cancellable, non-returnable," consistent with the custom Products designation under the SSA. *Id.* ¶ 82; Persson Decl. Exs. F (147:14-20), G. In asking to cancel and scrap all units, Gousset terminated the SSA, which was in place for the exclusive purpose of producing ASPINA Blowers. *Id.* ¶¶ 19, 83. Tex Moseri, Honeywell's former Director of Procurement, confirmed that Honeywell's attempt to cancel units constituted a termination of the SSA under Sections 2.3 and 2.4 of the agreement. *Id.* ¶ 83; Persson Decl. Ex. E (154:21-155:17). Any attempt by Honeywell to claim that the request to cancel and scrap all units was a mere attempt to temporarily suspend shipments was dispelled by Gousset, who testified that "temporarily suspending scheduled shipments" does not "mean suspending shipments for two years." *Id.* ¶ 32; Persson Decl. Ex. F (159:17-20).

## ARGUMENT

### I.  LEGAL STANDARD

Defeating a motion to dismiss under Rule 12(b)(6) only requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (citation omitted). Courts "must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party's favor." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.) (citation omitted).

### II.  THE FAC SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6)

The FAC alleges that Honeywell breached three separate provisions of the SSA. First, Honeywell breached sections 2.3 and 2.4 of the SSA by failing to pay for custom products that were to be delivered under the terms of the purchase orders within 30 days of any notice of cancellation. FAC, ¶¶ 98-99. Second, Honeywell breached section 2.4 of the SSA by failing to

pay for outstanding "custom Products" after it terminated the agreement. *Id.* ¶¶ 100-101. Third, Honeywell breached § 12.1 of the SSA when it suspended shipments indefinitely and never paid for the custom Products. *Id.* ¶ 102. Honeywell now moves to dismiss the FAC's breach of contract claim only as to (i) termination of the SSA under section 2.4 and (ii) termination of the purchase orders under sections 2.3 and 2.4 of the SSA. Honeywell fails to address Shinano's cause of action for breach of section 12.1 of the SSA, conceding its viability. For the reasons explained below, this Court should deny Honeywell's motion in its entirety.

A.    **The FAC Sufficiently Alleges Breach of Contract as to Honeywell's Termination of the SSA.**

To establish a *prima facie* claim for breach of contract, a plaintiff must allege "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Market Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004). Shinano alleges the existence of a valid and enforceable contract between the parties, the SSA. FAC, ¶ 95. Shinano also alleges that Honeywell was obligated to pay for unique raw materials, work in progress, and finished products for all custom Products it had ordered but that were not yet delivered in the event Honeywell terminated the SSA. *Id.* ¶ 100 (SSA § 2.4). The FAC further alleges that on February 19, 2021, Honeywell terminated the SSA and that by failing to pay for the ASPINA Blowers upon termination, Honeywell breached the agreement. *Id.* ¶ 101.

Honeywell moves to dismiss this claim on two grounds. First, Honeywell argues that it merely exercised its contractual rights to cancel purchase orders and suspend scheduled shipments. Second, Honeywell argues that it could not have terminated the SSA because it never gave formal written notice as required under Section 24.2 of the SSA.

As an initial matter, this Court held in granting Honeywell's motion to dismiss the Complaint that Shinano maintains a valid cause of action for Honeywell's "failure to pay upon

termination of the Agreement." Dkt. No. 51 at 5-6; *see also* Dkt. No. 63 at 1 (noting that "Plaintiffs filed an Amended Complaint in accordance with the Opinion."). Honeywell's argument should therefore be summarily rejected as an improper and untimely attempt to seek reconsideration of the Court's prior decision finding that Shinano stated a claim for Honeywell's failure to pay on termination of the SSA. Honeywell's arguments are equally unavailing on the merits.

      **1.**     **Whether Honeywell Terminated Purchase Orders or the SSA is an Issue of Fact.**

Honeywell argues, as it did in its motion to dismiss the Complaint, that it "never terminated the Agreement" but, instead, "invoked its contractual rights to cancel purchase orders." Dkt. No. 65 at 5, 9; Dkt. No. 26 at 4, 7; Dkt. No. 28 at 1, 5. As this Court previously stated, "[t]hat is an issue to be raised at summary judgment or trial and does not go to the sufficiency of a repleaded complaint." Dkt. No. 51 at 6; s*ee Kreiss v. McCown De Leeuw & Co.*, 37 F. Supp. 2d 294, 298 (S.D.N.Y. 1999) (denying the motion to dismiss where "the issue is one of fact not properly resolved on a motion to dismiss").

      **2.**     **Honeywell's Argument that It Failed to Formally Terminate the SSA Must be Rejected.**

Honeywell argues that its notice of termination did not meet the requirements of the SSA because it was via email, and therefore it never terminated the agreement and could not have breached the SSA. Dkt. No. 65 at 9-10. As a preliminary matter, the FAC does not expressly state that the February 19 termination was via email. Regardless, section 24.2 of the SSA merely states that "[a]ll notices, requests, demands and other communications … must be in writing." New York law recognizes that emails may constitute writings and nothing in the SSA expressly prohibits emails as a form of writing. *See Stevens v. Publicis, S.A.*, 50 A.D.3d 253, 254 (1st Dep't 2008) (emails may constitute writings under the statute of frauds). The provision upon which Honeywell relies addresses when notice "will be deemed to have been duly given," identifying the

effective date of notice if provided personally or via overnight mail. As for who may be provided with notice, the SSA lists Jim Rideout, who left Shinano in 2019, and Nick Lauro, the very person to whom Gousset provided notice. *See* FAC, ¶¶ 99, 101; Persson Decl. Ex. H (11:4-6, 12-14).

But even if the Court were to find that Honeywell's notice of termination did not meet section 24.2's requirements,[2] the Court must reject Honeywell's argument because (i) Honeywell cannot hide behind its own defective performance to escape contractual liability under New York waiver law and (ii) Honeywell is judicially estopped from arguing that all contractual communications must be via courier or overnight mail where it has successfully represented in this litigation that its email notices purporting to terminate purchases and suspend delivery were effective under the SSA. We address each argument in turn.

### a. Honeywell Waived Any Argument that Its Notice Did Not Comply with the SSA.

Under New York law, "a contracting party may … waive enforcement of a contract term notwithstanding a provision to the contrary in the agreement" through its own words or conduct. *Baker v. Norman*, 226 A.D.2d 301, 304 (1st Dep't 1996) (citation omitted); *Madison Ave. Leasehold, LLC v. Madison Bentley Assocs. LLC*, 30 A.D.3d 1, 4-9 (1st Dep't 2006), *aff'd*, 8 N.Y.3d 59 (2006) (a contracting party may waive enforcement of any provision of a contract as evinced by its words or conduct). New York courts have applied the concept of waiver in cases where a party's notices did not comply with the requirement set forth in the applicable agreement. In *Baker*, the First Department found that a facsimile notice of cancellation was still valid, even

---

[2] In touting strict compliance with notice provisions, Honeywell relies on cases inapposite to the facts of this case. Dkt. No. 65 at 10. As support, Honeywell relies on cases involving the *plaintiff's* failure to provide notice to the *defendant*. *See id.; see also Perini Corp. v. City of New York*, 18 F. Supp. 2d 287, 295 (S.D.N.Y. 1998); *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 75 (S.D.N.Y. 2010); *Benex LC v. First Data Merch. Servs. Corp*., 2016 WL 1069657, at *4 (E.D.N.Y. Mar. 16, 2016). Here, Honeywell, the defendant, argues that its own failure to comply with the SSA's notice provision forecloses recovery by Shinano. "[A] party cannot insist upon a condition precedent, when its non-performance has been caused by himself." *A.H.A. Gen. Const., Inc. v. New York City Hous. Auth.*, 92 N.Y.2d 20, 31, 699 N.E.2d 368, 374 (1998) (citation omitted).

where the agreement required all notices to be sent via certified mail or personal delivery, where the recipient did not dispute receipt of the notice. *Id.* Similarly, in *Dellicarri v. Hirschfeld*, 210 A.D.2d 584, 585 (3d Dep't 1994), the Third Department noted that "[s]trict compliance with the contract's notice provisions," which required notices to be sent by registered or certified mail, need not be adhered to because "defendants do not claim that they did not receive actual notice or that they were in any way prejudiced as a result of this minimal deviation." *See also Thor 725 8th Ave. LLC v. Goonetilleke*, 138 F. Supp. 3d 497, 509-510 (S.D.N.Y. 2015) ("[S]trict compliance with contractual notice provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by the deviation.").

Here, Honeywell cannot credibly argue that Shinano's breach of contract claim should be dismissed because *Honeywell's* notice of termination of the SSA was invalid. Indeed, unlike in *Baker* and *Dellicarri*, both of which nonetheless rejected identical arguments, here Honeywell was not a recipient of the defective notice—Honeywell sent the purportedly defective notice. Honeywell cannot argue it was prejudiced by its own defective notice. Thus, Honeywell waived any argument that its termination was not in compliance with the SSA.

### b. Honeywell is Estopped from Arguing Deficient Notice.

The doctrine of judicial estoppel also precludes Honeywell from arguing that an emailed notice of termination does not satisfy the SSA. Judicial estoppel prevents a party who "assume[d] a certain position in a legal proceeding, and succeed[ed] in maintaining that position" from "thereafter, simply because his interests have changed, assum[ing] a contrary position." *Uzdavines v. Weeks Marine, Inc*., 418 F.3d 138, 147 (2d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).

Honeywell has waived and is judicially estopped from arguing that an email notice cannot satisfy the requirements of section 24.2 because it has successfully represented to this Court that

its communications were effective to suspend shipments and cancel purchase orders under the SSA. *See, e.g.,* Dkt. Nos. 8 at 1-2 (Honeywell pre-motion letter identifying that "Honeywell invoked its contractual rights to modify the delivery schedule and … to cancel around 12,000 units of the Product."); 26 at 4 (same); 13 ("Honeywell affirmatively told Shinano, in writing, it wished to cancel *units* in August 2020 … [and] [t]his was more than 30 days' prior notice and Honeywell does not need Shinano's permission to cancel a purchase order under the SSA[.]"); 28 at 1 ("Honeywell acted within its express rights in August 2020 to terminate purchase orders"); 58 at 4 (identifying that Honeywell acted within its "explicit right to terminate purchase orders."); 65 at 5 ("Honeywell invoked its contractual rights to cancel purchase orders"). Every one of these purportedly effective "notices, requests, demands and other communications" to suspend shipment and cancel purchases were delivered via email.[3] *See* Persson Decl., Exs. A, B, C.

This Court accepted Honeywell's inconsistent position in granting the original motion to dismiss on Shinano's negligent misrepresentation claim relating to suspended shipments. Dkt. No. 51 at 11-12. Honeywell is therefore judicially estopped from arguing, or has otherwise waived the argument, that its notice of termination of the SSA was ineffective because it was sent via email. Indeed, if only communications delivered via courier or express mail are effective under the SSA, then Honeywell never cancelled any purchase orders, never terminated the SSA, and never suspended shipment or changed deliveries. Were this Court to accept Honeywell's argument, then it must require Honeywell to specifically perform the contract, accept the long overdue delivery of all Outstanding Products, and tender payment as set forth in the following section.

---

[3] Moreover, and as this email correspondence shows, Honeywell never attempted to cancel any numbered purchase order, it requested to cancel quantities, making the requests twice defective according to Honeywell's own arguments.

**B.      Shinano's FAC Sufficiently Alleges that Honeywell Breached the SSA by Failing to Accept Delivery.**

Shinano has sufficiently alleged a claim, pursuant to Section 12.1, that Honeywell breached the SSA by not accepting delivery of the remaining ASPINA Blowers. By failing to address this claim, Honeywell concedes that it must move forward.

Section 12.1 of the SSA states that "Honeywell reserves the right to change delivery schedules and ***temporarily suspend scheduled shipments***, beyond the replenishment lead time of 5 business days." SSA § 12.1 (emphasis added). Honeywell cannot be seen to have "temporarily" suspended shipments where it requested that Shinano "cancel and scrap all units currently being held by ASPINA." FAC, ¶ 83. Allowing Honeywell to suspend shipments in perpetuity would render Sections 2.3 and 2.4 of the SSA meaningless, in violation of New York law. *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) ("[i]n construing a contract, a court should read the contract as a whole and avoid any interpretation that would render a contractual provision without force and effect."). District Judge Jed S. Rakoff previously interpreted a nearly identical provision and rejected any interpretation that would allow a party to circumvent termination or cancellation clauses in the contract by deferring delivery in perpetuity. *Kolmar v. Koch Supply & Trading, LP*, 2011 WL 6382566, *8 (S.D.N.Y. 2011). In *Kolmar*, the court concluded that a provision which allowed the buyer to change delivery schedules and temporarily suspend shipments did not alter the determination that time is of the essence; "[t]o interpret the Contract as granting [buyer] the absolute right to defer deliveries would render the delivery windows and the cancellation clause meaningless, and violate a fundamental principle of contract law." 2011 WL 6382566, at *8 (citing *United States ex rel. Mathusek Inc. v. J. Kokolakis Contr., Inc*., 2007 U.S. Dist. LEXIS 44567, at *11 (S.D.N.Y. 2007) (contract "should be construed so as to give full meaning and effect to all of its provisions")).

Moreover, Honeywell's own witness, Gousset, conceded that "temporarily suspending scheduled shipments" under Section 12.1 does not "mean suspending shipments for two years." *Id.* ¶ 32; Persson Decl. Ex. F (159:17-20). As in *Kolmar*, to construe "temporarily" in this manner would be contrary to any reasonable construction of "TIME IS OF THE ESSENCE" under 12.1.

### C. Honeywell Also Breached Sections 2.3 and 2.4 of the SSA.

Honeywell also seeks dismissal of Shinano's claim as to breach of sections 2.3 and 2.4 of the SSA. Specifically, section 2.3 of the SSA only permitted Honeywell to cancel any purchase orders upon "30 days' prior written notice" and does not address custom Products at all. Thus, combined with section 2.4 of the SSA, which states that Honeywell must pay for "custom Products that are within the lead time under the terminated Purchase Order(s)," these sections show that Honeywell must pay for all custom Products that were scheduled for delivery under the terms of the original purchase orders before the expiration of the 30 days' written notice period.

To the extent Honeywell purported to cancel any purchase orders for the Outstanding Products well after the original delivery dates for those products, Honeywell breached the SSA and was required to pay for the Outstanding Products. FAC, ¶¶ 98-99. In its motion, Honeywell seeks dismissal of this claim on the sole basis that the Court previously rejected this argument in denying Shinano's motion for leave to amend. *See* Dkt. No. 63 at 3. But this Court's Order dismissing the Complaint did not interpret the 30 days' notice provision under section 2.3 at all, nor did it address the termination of purchase order provision of section 2.4, which required Honeywell to pay for "custom Products that are within the lead time under the terminated Purchase Order(s)." *See* Dkt. No. 51 at 6. Accordingly, the Court's previous ruling does not address *the FAC's* contract claim as to purchase orders. Moreover, and even if the claim were the same as in the Complaint, Honeywell's invocation of the law of the case doctrine does not apply; law of the

case applies to a question previously resolved on appeal and not an earlier ruling of a trial court. *Micro-Link, LLC v. Town of Amherst*, 65 N.Y.S.3d 399, 403 (4th Dep't 2017).

Substantively, Honeywell's argument that it had the unequivocal right to terminate purchase orders at any time and for any reason should be rejected as it would render the requirement to provide "30 days' prior written notice" "without force and effect." *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010) (a court must "give full meaning and effect to all of [the contract's] provisions"); SSA § 2.3. Under New York law, even if Honeywell elected to terminate the purchase orders, Honeywell would only escape liability for any performance scheduled to conclude more than 30 days following termination of the purchase orders and according to the terms set forth in the purchase orders. *Vardi v. Mutual Life Ins. Co. of New York*, 136 A.D.2d 453, 523 N.Y.S.2d 95 (1st Dep't 1988) ("The contractual provision, giving plaintiff the right to thirty days' notice in the event of termination without cause, is clearly an express limitation of an employer's right to terminate employment at any time."); *Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*, 706 F.Supp.2d 350, 356 (S.D.N.Y. 2009) (holding that an immediate termination notice was not effective until the 45-day pretermination notice period had elapsed). Here, the purchase orders reflect that every product ordered by Honeywell was to be delivered on or before December 19, 2020, and therefore Honeywell was fully liable for all orders at the time of any alleged cancellation of purchase orders on February 19, 2021 and through March 22, 2021. *See* FAC, ¶¶ 40-47.

By ignoring the language in section 2.3 requiring "30 days' notice," ignoring that custom Products must be paid for under section 2.4, and ignoring the word "temporarily" in section 12.1 regarding the suspension of shipments, Honeywell is in essence claiming that it can indefinitely delay any delivery—even for custom Products that were ordered and completed months or even years earlier—and then cancel those purchase orders "without liability" by unilaterally

rescheduling a delivery date more than 30 days after cancellation. That language appears nowhere in the SSA, would frustrate the purpose of the contract and render the provisions requiring Honeywell to pay for custom Products without force and effect, and is absurd. *See Luitpold Pharms., Inc*, 784 F.3d at 87 ("[i]n construing a contract, a court should read the contract as a whole and avoid any interpretation that would render a contractual provision without force and effect."). Judge Rakov rejected this type of one-sided construction in *Kolmar*. At worst, such an implausible reading of the SSA is a question for the finder of fact. *Wurtsbaugh v. Banc of Am. Sec. LLC*, 2006 WL 1683416 at *5 (S.D.N.Y. June 20, 2006) ("Where a contract term is ambiguous and material to the breach of contract claim, the claim may not be dismissed for failure to state a claim."). And any jury would be entitled to hear the testimony of Honeywell's witnesses on this topic, who admitted that once Honeywell issues a purchase order, "Honeywell would pay for the item being purchased," and any cancellation of purchase orders would result in a cancellation charge with Shinano "provid[ing] any feedback or any impact of this cancellation." *See* FAC, ¶¶ 31, 48, 83. Accordingly, Honeywell's motion to dismiss Shinano's breach of contract claims relating to any cancellation of purchase orders must be denied.

## III.     THE COURT SHOULD CERTIFY FOR INTERLOCUTORY APPEAL

To the extent this Court grants any portion of Honeywell's motion to dismiss, Shinano respectfully requests that this Court certify the relevant issues for an immediate appeal. Specifically, Shinano requests certification pursuant to 28 U.S.C. § 1292(b) for an immediate interlocutory appeal of (i) any partial grant of Honeywell's pending motion to dismiss and (ii) the Court's refusal to grant Shinano's request for leave to amend (Dkt. No. 63 ("MFL Order")). At the heart of this dispute is Shinano's attempt to collect $2.8 million dollars for custom Products Honeywell ordered under false pretenses during the peak of COVID-19. Should this Court

prejudice Shinano by limiting its theories of recovery, immediate interlocutory appeal is necessary to avoid further injustice to Shinano and preserve judicial economy.

By way of background, this Court stated in a July 2022 conference on Honeywell's motion to dismiss the Complaint that this case was not likely to terminate on a motion to dismiss and directed the parties to conduct *eight months* of discovery, during which the Court required the parties to complete discovery in an extremely compressed timeframe and without the usual deference for counsel to manage their cases. Then, two weeks before the *close of fact discovery*, this Court abruptly stayed discovery so that it could grant Honeywell's motion in its entirety, denying Shinano leave to amend on all but one claim and thereby effectively depriving it of the use of the many facts and Honeywell witness admissions garnered during eight months of discovery. *See* Dkt. No. 53. Later, this Court denied Shinano's motion for leave to amend even while having before it a proposed pleading incorporating facts from discovery that showed that amendment was not futile. Dkt. No. 63. Shinano substantially altered its theories of recovery in the proposed Second Amended Complaint based on the significant discovery obtained and this Court's Order on the motion to dismiss, particularly as to its breach of the covenant of good faith and fair dealing and fraud claims. Should this Court further hamper Shinano's theories of liability and recovery by granting, even in part, Honeywell's pending motion to dismiss, the Court should certify the following issues for immediate interlocutory appeal.

### a. Honeywell's Pending Motion to Dismiss.

Under 28 U.S.C. § 1292(b), this Court has discretion to certify an appeal from an interlocutory order where the "order involves [i] a controlling question of law as to which [ii] there is substantial ground for difference of opinion and [iii] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The first factor is met as Honeywell's motion seeks dismissal of Shinano's claim for breach of contract based on its

interpretation of the SSA.  *See Network Pub. Corp. v. Shapiro*, 895 F.2d 97, 99 (2d Cir. 1990) (interpretation of a contract is a "pure question[] of law.").  The second factor—that "there is substantial ground for difference of opinion"—would also be met as there is "substantial doubt" that "the district court's order was correct."  *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005).  As set forth above, this Court is required to "construe the [SSA] so as to give full meaning and effect to [its] material provisions" so as to not "render any portion meaningless."  *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007).  Any interpretation of the provisions of the SSA at issue as proposed by Honeywell—specifically, Honeywell's interpretations of sections 2.3, 2.4, and 12.1—ignores material terms, construes other terms in a light most favorable to Honeywell, and fails to give force and effect to key provisions of the agreement.  Shinano also meets the third requirement—that an immediate appeal will materially advance the ultimate termination of the litigation—because limiting discovery to a contract theory based solely on termination of the SSA would waste the parties' resources by requiring duplicative discovery should the Second Circuit later (and likely) reverse based on pure questions of law relating to the SSA and its material terms.

### b.  Certify Order Denying Leave to Amend.

This Court should also certify the portion of the MFL Order that denied Shinano leave to amend.  First, denial of Shinano's request for leave to amend is a pure question of law.  Second Circuit case law falls in line with the U.S. Supreme Court in liberally providing that a "court should freely give leave [to amend the complaint] when justice so requires."  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012).  Second, there is "substantial doubt" that this Court's Order denying Shinano's motion for leave to amend was correct.  Indeed, the MFL Order does not address *any of the new facts* gathered during eight months of discovery that

support Shinano's claims—including facts where Honeywell's own witnesses ascribed meaning to material contract terms in favor of Shinano that this Court has ignored.

As an example, Shinano sought leave to add a claim for breach of the implied covenant based on misrepresentations Honeywell made regarding a commitment from the U.S. Government and for depriving Shinano of its rights under section 3.2 of the SSA—the very section this Court used to justify dismissal of Shinano's breach of modified contract claim. Dkt. No. 51 at 8. This Court rejected Shinano's request to amend on three grounds.

First, on the basis that the SSA contains a merger clause, which the Court held precluded any reliance on extra-contractual representations. Dkt. No. 63 at 2-3. However, "as long as the implied term is consistent with other terms in the contract, a merger clause does not prevent a court from inferring a covenant of good faith and fair dealing." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012) (citing omitted). This Court cannot both reject Shinano's breach of modified contract claim that the quantities ordered by Honeywell far exceeded those contemplated in the SSA because Shinano could have rejected any purchase orders within two business days of receipt under section 3.2, and then reject a claim for breach of the covenant urging Honeywell deprived Shinano of any ability to exercise a right to reject purchase orders for 109,600 units under section 3.2 by falsely claiming it had received 112,000 U.S. Government orders when it had only received a purchase order for 16,950 units.

Second, the Court rejected Shinano's request for leave on the grounds that Shinano was permitted to amend its claim for breach of contract as to termination of the SSA. But to the extent this Court finds that Honeywell did not terminate the SSA based on a form over substance defect that Honeywell has repeatedly waived and, thus, did not breach the SSA, the equities mandate that Shinano have some recourse through breach of the implied covenant to avoid the outcome where Honeywell "exercises its discretion under a contract to … deprive the other party of the value of

the agreement, or benefit itself at the other party's expense." *Trireme Energy Holds., Inc. v. Innogy Renewables US LLC*, 2021 WL 3668092, at *7 (S.D.N.Y. Aug. 17, 2021). Shinano must also be permitted to seek specific performance under sections 2.4 and 12.1 should the Court find that Honeywell's email notice was insufficient, which would necessarily render every communication from Honeywell to Shinano purporting to cancel quantities and delay delivery in violation of section 24.2, such that Honeywell must accept delivery of and pay for all custom Products.

Finally, this Court denied leave on the basis that the implied covenant claim is duplicative of Shinano's breach of contract claim. This is incorrect: both allege distinct facts and theories. The breach of contract claim alleges various breaches of the SSA, whereas the implied covenant claim specifically relates to Honeywell (i) claiming to have a commitment from the U.S. Government for the purchase of 109,600 PAPR units when the government only ordered 16,950 units, (ii) refusing to accept delivery of the Outstanding Products after coercing Shinano to exponentially increase its production in the face of COVID-19, and (iii) urging that it had neither terminated purchase orders nor the SSA but merely suspended shipments in perpetuity to avoid liability. Dkt. No. 55-2 (Proposed Second Amended Complaint), ¶ 109.

There is also "substantial doubt" that the Court's denial of Shinano's request to amend its fraud claim was correct. This Court held that Honeywell's misrepresentations as to (i) the U.S. Government's firm commitment to purchase 109,600 units and (ii) its willingness to accept delivery as required under the SSA "[were] not collateral to the Agreement and [are] defeated by its integration clause." Dkt. No. 63 at 4. To the contrary, those representations and omissions pertain to an entirely *separate agreement* between Honeywell and U.S. Government. *See*, *e.g.*, Dkt. No. 55-2, ¶¶ 4, 58, 120, 122. New York law supports the proposition that where the alleged fraud pertains to an entirely separate agreement, the fraud is collateral to the contract between the plaintiff and defendant. *See*, *e.g.*, *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 132 (S.D.N.Y.

1999).  Here, the SSA has nothing to do with the provision of PAPR to the U.S. Government; it pertains to Shinano's provision of *components* of the PAPR to *Honeywell*.

Similarly, in *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181, 184 (2d Cir. 2007), the Second Circuit held that misrepresentations concerning, among other things, the financial health of a subsidiary that plaintiff was interested in acquiring, were misrepresentations separate and apart from the purchase agreement and, therefore, plaintiff was entitled to bring a claim for fraudulent inducement.  The same holds true here: Honeywell's agreement with the U.S. Government is separate and apart from its agreement with Shinano, Honeywell misrepresented the terms of that agreement to induce Shinano to take great business risks during a global pandemic, and, therefore, Shinano should be permitted to proceed on its fraudulent inducement claim. Finally, as to the third factor, an immediate appeal of the MFL Order will conserve resources and expedite resolution by eliminating another round of discovery following the Second Circuit's reversal for abuse of discretion.  Accordingly, Shinano requests that this Court certify the MFL Order for interlocutory review.

## CONCLUSION

For the foregoing reasons, Shinano respectfully requests that the Court deny Honeywell's motion in its entirety.

Dated: New York, New York
      May 5, 2023

DAVIS WRIGHT TREMAINE LLP

By: */s/ Spencer Persson*
    Spencer Persson (*pro hac vice*)
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
spencerpersson@dwt.com

*Attorneys for Plaintiffs ASPINA Incorporated and Shinano Kenshi Co., Ltd.*